## STATE *v.* PHŒNIX INSURANCE CO.

### (*Nashville.*    March 18, 1893.)

1. FOREIGN CORPORATIONS.    *State's power to exclude and regulate.*

   The State's right and power is undoubted to exclude from its borders foreign corporations engaged in the business of insurance, or to admit them upon any terms, however onerous.

   Cases cited and approved: 8 Wall., 168; 10 Wall., 410; 113 U. S., 574; 94 U. S., 535.

2. SAME.    *Admission of fire insurance companies.*

   Before a foreign fire insurance corporation can lawfully engage in business in this State, it must file copy of its charter in the office of the Secretary of State, and register abstracts thereof in the counties where it proposes to do business, and must, in addition, comply with the requirements of the laws administered through the Bureau of Insurance by the Commissioner of Insurance.

   Acts construed: Acts 1877, Ch. 31; Acts 1891, Ch. 122 and Ch. 47.

3. SAME.    *Liable for charter tax and fees.*

   And such company is liable for the charter tax imposed for the privilege of filing its charter, and for the fees allowed for such filing, and for registration of abstracts of its charter.

   Acts construed: Acts 1891, Ch. 25 (Ex. Sess.).

4. STATUTES.    *Rule of construction.*

   Except in a very clear case, that which is within the letter of a statute will not be excluded from its operation as not being within its spirit.

   Cases cited and approved: State *v.* Turnpike Co., 2 Sneed, 90; 4 Wheat., 202-3.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.    W. K. McALISTER, J.

State *v.* Phœnix ·Insurance Co.

Attorney-general PICKLE for State.

VERTREES & VERTREES and ·P. D. MADDIN for Insurance Company.

WILKES, J. This cause was tried in the Circuit Court of Davidson County, before Hon. W. K. McAlister, Judge, upon an agreed statement of facts. Judgment was rendered against the State, from which it appealed, and, through the Attorney-general, has assigned errors.

The Judge in the Court below delivered a written opinion, in which the facts are set out at length. The conclusions of the trial Judge are stated, and the reasons upon which these conclusions are based are given with the force and clearness usual with that learned Judge.

The opinion is as follows:

"This case is submitted to the Court upon an agreed statement of facts, and the purpose of the litigation is to test the liability of foreign fire insurance companies to the payment of certain privilege taxes and official fees. The following facts appear in the printed stipulation of counsel, to wit:

"That defendant is a fire insurance company, chartered by, and organized under, the laws of New York, with its chief office and place of business in Brooklyn, in said State. Said company is engaged in transacting a fire insurance business in this State, and has local agents employed in twelve counties of the State. During the years in which

the defendant company has been engaged in its business in Tennessee, it has complied with all the laws of the State governing, or relating to, fire insurance companies. It has filed a copy of its charter, and a power of attorney to acknowledge service of process, with the Treasurer of the State, in accordance with the Insurance Act passed by the Legislature of 1891. It has also obtained from the Treasurer of the State the certificate or authority to do business, and has obtained license from him for its local agents, and has caused certified copies thereof to be deposited with the County Court Clerk of the counties in which it does business, as the laws require.

" It has in all respects complied with the laws of Tennessee as administered by the Bureau of Insurance.

" There are *eighty-five* foreign insurance compa nies doing business in the State, and the aggregate amount of taxes and fees paid by them during the year 1891 to the State and to the Commissioner of Insurance was $48,065.77. The defendant company paid of this amount, in taxes and fees, during said year, the sum of $618.25.

" Now, in addition to doing all these things, it is insisted, on behalf of the State, that under the provisions of the Act of March 26, 1891, and Section 8 of the Revenue Act of the Extra Session of 1891, the defendant is required to file a copy of its charter with the Secretary of State, and to cause an abstract thereof to be recorded in the

Register's office of every county in which it transacts business, and to pay to the State a privilege tax of ten dollars, and to the County Register and Secretary of State a fee of three dollars each for filing and recording its charter.

"The questions submitted for the determination of the Court are, viz.:

"*First.*—Whether or not the defendant is liable for the payment of a privilege tax of ten dollars, which the State claims by virtue of the Act, which is Chapter 25 of the Extra Session of 1891.

"*Second.*—Whether or not the defendant, a foreign fire insurance company, which has complied with the laws administered and executed by the Bureau of Insurance, and filed a copy of its charter with the Commissioner of Insurance for 1891–2, is *also* obliged or required to file a copy thereof with the Secretary of State.

"*Third.*—Whether the defendant, having caused the license issued to its agents by the Commissioner of Insurance to be filed with the County Clerks of the respective counties, is *also* obliged or required to cause an abstract of its charter to be recorded in every county in which its agents do business.

"*Fourth.*—Whether the said tax and fees demanded by the Secretary of State are required by law to be paid.

"The settlement of these questions depends upon a proper construction of the Acts of Assembly out of which the present controversy has arisen. The

Act upon which the State relies in support of the position that the charters of foreign fire insurance companies are required to be filed in the office of the Secretary of State, is found in Chapter 122 of the Acts of 1891, which is entitled 'An Act to amend Chapter 31 of the Acts of 1877,' declaring the terms on which foreign corporations, organized for mining or manufacturing purposes, may carry on their business, etc., so as to make the provisions of said Act apply to all foreign corporations that may desire to own property or do business in the State. The second section of the Act of 1891 provides, viz.: That each and every corporation, created or organized by or under any government other than that of this State, for any purpose whatever, desiring to own property or carry on business of any kind or character in this State, shall first file in the office of the Secretary of State a copy of its charter, and cause an abstract of same to be recorded in each county in which such corporation desires or proposes to carry on its business, etc., as now required by Section 2 of Chapter 31 of Acts of 1877. It is conceded by counsel for defendant that this language is broad enough to sustain the contention of the Secretary of State, and to include foreign fire insurance companies, if nothing is to be considered but the language of this Act. It provides in terms that the Act of 1877, Chapter 31, shall be so 'amended and enlarged' as that its provisions shall apply to all foreign corporations, and Section 2 is

expressly applied to all foreign corporations desiring to own property or carry on business of *any kind or character* in this State. The argument on behalf of defendant is, that foreign fire insurance companies, although within the *letter* of the statute, are yet not within the statute, because not within its spirit nor within the intention of its makers. There are cases which require us to disregard the letter of a statute when they are manifestly not comprehended within its spirit nor within the intention of its framers. A forcible illustration of this rule is found in the case of *Rector, etc., of Holy Trinity Church* v. *United States*, recently decided by the Supreme Court of the United States. (143 U. S., 457.) That case was a criminal prosecution, based upon what is known as the alien contract labor law, which prohibited the importation of *any* foreigner under contract to perform labor or *service* of *any kind*. The plaintiff in error was a religious society, incorporated under the laws of New York, and, after the passage of said Act, employed E. Walpole Warren, an alien residing in England, as the pastor and rector of such church, who, thereupon, removed to the United States and entered upon such service. The Circuit Court held that the contract was within the prohibition of the statute, and rendered judgment against the church for a heavy penalty. On appeal to the United States Supreme Court, the case was reversed in an opinion by Judge Brewer, who said:

" 'It must be conceded that the act of the corporation is within the letter of this statute, for the relation of rector to his church is one of service, and implies labor on the one side with compensation on the other. Not only are the general words 'labor' and 'service' both used, but also, as if to guard against any narrow interpretation, and emphasize a breadth of meaning, to them is added 'of any kind;' and, further, the fifth section of the Act makes specific exceptions, among them professional actors, artists, lecturers, singers, and domestic servants, which strengthens the idea that every other kind of labor or service was intended to be reached by the first section. It is a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers. This is not the substitution of the will of the Judge for that of the legislator, for frequently words of general meaning are used in a statute—words broad enough to include an act in question—and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.' As said in *Stradling* v. *Morgan*, Plowden, 205:

" 'From which cases it appears that the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance, and

those statutes which comprehended all things in the letter, they have expounded to extend to but some things, and those which generally prohibit all people from doing such an act, they have interpreted to permit some people to do it, and those which include every person in the letter, they have adjudged to reach to some persons only, which expositions have always been founded upon the intent of the Legislature, which they have collected sometimes by considering the cause and necessity for making the Act, sometimes by comparing one part of the Act with another, and sometimes by foreign circumstances.'

"In the case of the *United States* v. *Kirby*, 7 Wall., 482, the Court said :

" 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law, in such cases, should prevail over its letter.'

" With these principles in view, the question for decision is whether foreign fire insurance companies were intended to be included in the provisions of the Act of March 26, 1891. On the fourth of March, 1891, *the same* Legislature which passed the Act which, it is claimed, imposed these additional burdens upon foreign fire insurance companies, also enacted a law compiling into one Act all the

existing laws regulating the business of fire insurance. It requires all fire insurance companies to file with the Treasurer of the State certified copies of their charters. It also prescribes that local agents of said company, before transacting any business in any county of this State, shall procure a license from the Treasurer of the State, and that certified copies of the same shall be filed with the Clerk of the County Court. It also requires that all foreign fire insurance companies shall file with the Treasurer of the State a power of attorney, authorizing said officer to acknowledge service of process from any court of record in the State in a suit against said company. Said act also provides that for the privilege of doing business in the State, foreign fire insurance companies shall pay into the State Treasury the sum of $2.50 upon each $100 of premiums, which shall be in lieu of *all* other taxes. As already observed, this Act was passed on the fourth of March, 1891. On the twenty-sixth of March, 1891, the general law was passed which, it is claimed, also embraces foreign fire insurance companies, although no mention of such corporations is made in the Act. This latter Act purports to extend the provisions of an Act passed in 1877 to all foreign corporations. The Act of 1877 thus sought to be enlarged and extended, was entitled, 'An Act to declare the terms on which foreign corporations, organized for *mining* or *manufacturing* purposes, may carry on their business, and purchase, hold, and convey real

and personal property in this State.' It provided
that copies of the charters or acts of incorporation
of such foreign mining or manufacturing companies
should be filed in the office of the Secretary of
State, and abstracts thereof should be recorded in
the Register's office of every county in which it
proposed to do business or own property. The
Act recited that its chief object was to secure the
opening and development of the mineral resources
of the State, and to facilitate the introduction of
foreign capital. It provided· that home creditors
shall have preference over foreign general creditors
in the distribution or subjection of assets. It pro-
vided, also, that mining corporations and corpora-
tions mining metals might build railroads, canals,
and telegraph lines. It provided, also, that any
corporation coming under the Act, might establish
towns and villages. Could any thing be more un-
reasonable than the idea that the Legislature of
1891, having just enacted a comprehensive compila-
tion of the fire insurance laws of the State, pro-
viding, in detail, for the regulation of the whole
business, should, in three weeks thereafter, enact
another law, and invest foreign *fire* insurance com-
panies with all the incongruous powers and func-
tions that belonged to a foreign mining and man-
ufacturing corporation under the Act of 1877?
And all this is to be inferred from general words
employed in the statute, for there is not the slight-
est reference to *insurance* companies to be found
anywhere in the Act.

"Again, it is to be presumed that if the Legislature intended to embrace foreign fire companies in the provisions of the Act March 26, 1891, it must have had some useful purpose in view. If the object was to require the charter to be filed in public offices, so as to be accessible to all, that duty was already imposed upon said companies by the Act of March 4, 1891, which required copies of their charters to be filed with the Treasurer of the State, who is *ex officio* Commissioner of Insurance. The provision with reference to service of process upon such companies is neither so stringent nor efficacious as that contained in the Act of March 4, 1891. It is true the insurance law does not require that an abstract of its charter be filed in every county in which the company offers to do business, but it does require that its local agents shall obtain a license from the State Treasurer, which shall be recorded in every county in which business is transacted. If it be conceded that a useful public purpose would be subserved in requiring an abstract of the charter to be recorded with the County Court Clerk, as provided by the Act of March 26, 1891, that provision could not be enforced, unless the whole act is applicable to foreign fire companies. The language of counsel, which is found in their printed brief, the Court thinks very apposite:

"'If the Act of March 26 relates to foreign fire companies, it is useless, oppressive, and absurd. It is useless, because provisions covering the same

ground (substantially) already existed; it is absurd, because the existing provisions are more effective, and the powers which said Act confers, if exercised by an insurance company, would be ridiculous; and it is oppressive, because it imposes a heavy tax on the companies to attain an end which the companies were already taxed to attain, and which is attained by the older system, and under the first tax, in a much better way.'

" If, then, the extension of the Act of March 26 to foreign fire insurance companies is useless, oppressive, and absurd, the construction invoked cannot be accepted as correct. It is the duty of the Court in such a case to say that, however broad the language of the statute may be, the defendant company, although within the *letter* of the Act, is not within the *intention* of the Legislature, and, therefore, cannot be within the statute.

"As to the tax imposed by Section 8 of Chapter 25 of the Acts of the Extra Session of 1891, it is plain that tax is restricted to *domestic* corporations, and has no application to foreign corporations. Judgment will be entered in favor of defendant on all the issues, and the State will pay the costs."

There can be no doubt of the right of the State to exclude all foreign fire insurance companies from its borders if it see proper so to do, or to admit them upon such terms as it may choose, however onerous. *Paul* v. *Virginia,* 8 Wall., 168; *Ducat* v. *Chicago,* 10 Wall., 410; *Chicago, etc., Ins.*

*Co.* v. *Needles*, 113 U. S., 574; *Doyle* v. *Cent. Ins. Co.*, 94 U. S., 535.

With the question of good policy involved in their admission, this Court can have nothing to do. That is a matter wholly for the Legislature to determine.

The simple question with which we are confronted is: Does Chapter 122 of Acts of 1891 embrace foreign fire insurance companies, and require their charters to be registered in the office of the Secretary of State, and abstracts thereof in the several counties where they do business, as is by that Act required of all other classes of foreign corporations?

The language of the Act leaves no room for doubt or construction.

The first section applies to all foreign coporations organized for any purpose whatever that may desire to do any kind of business in this State. The second section applies to each and every foreign corporation "*organized*" for any purpose whatever, and requires of them registration of charters and abstracts. The third section makes it unlawful for any foreign corporation to do or attempt to do any business, etc. The fourth section makes a corporation complying with the Act, to all intents and purposes, a domestic corporation; and the fifth section subjects their property to attachment.

The chief purpose of the Act was not to confer new privileges, but to impose restrictions upon foreign corporations.

It is true that, because of the adoption of Chapter 31 of the Acts of 1877, some very extraordinary privileges may have been conferred upon foreign corporations, and some privileges that domestic corporations of the same classes do not possess—privileges that foreign fire insurance companies cannot avail themselves of conveniently; but this is not a sufficient reason why foreign fire insurance companies should not be subjected to the restrictions of the Act.

The Act of 1891, Chapter 47, regulates domestic as well as foreign fire insurance companies, and prescribes the terms upon which each may do business in the State, and requires each to file with the Insurance Commissioner a certified copy of its charter. Chapter 122 prescribes the terms upon which a foreign corporation can be admitted into the State, while Chapter 47 prescribes the terms upon which an insurance company may do business that has already been admitted into the State. Domestic fire insurance companies must obtain their charters from the Secretary of State, and have them registered in that office, for which they must pay a fee. Not only so, but a copy of their charter must be filed in the office of the Insurance Commissioner. The requirement that a copy of the charter of each foreign fire insurance company shall be registered in each county where it proposes to do business, may have been, and doubtless was, considered by the Legislature a precaution to enable policy-holders to more conven-

28—8 P

iently and intelligently determine whether such company was so constituted and organized as to merit confidence and trust. These foreign fire insurance companies transact more business than any other class of corporations, and need to be more carefully regulated and guarded. They virtually become domestic corporations, so far as to be subject to a privilege tax like domestic corporations, by the plain provisions of the law to that effect, but with some additional privileges under the Act of 1877, which domestic corporations do not enjoy.

There is not necessarily any want of harmony in the two Acts, when properly construed, the one regulating the terms and prescribing the conditions on which all foreign insurance companies shall be admitted into the State, and the other prescribing the terms on which they may do business after they are admitted.

The position assumed that extraordinary and incongruous powers are conferred by the adoption of the Act of 1877, such as to build railroads, bridges, telegraph lines, etc., is not sustained by a proper analysis of the two Acts. The Act of 1877 provides for two classes of corporations—mining and manufacturing. The sixth section of that Act gave the powers enumerated only to corporations engaged in mining, and such as were engaged in manufacturing metal. It does not, therefore, follow that these powers have been conferred on insurance companies by the laws we are now construing, as they were not even conferred on all the corporations

authorized to do business under the Act of 1877. As to the provision of the eighth section, that any corporation having and obtaining the privileges of this Act may establish towns, villages, and settlements for the use of its employes and others, it is sufficient to say that, conceding this power to be now conferred upon foreign fire insurance companies, there is no valid objection to it. The Legislature had authority to confer it, and if it becomes necessary for use of employes and others that such companies should build towns, villages, or settlements, it certainly could not be hurtful to the public, nor improper, to allow it to be done, and the conferring of such power would not vitiate the Act.

The companies are not compelled to use the authority, but if their employes should become so numerous, and their means so abundant, as to justify its exercise, then they have the necessary permission to do so, and no reason is apparent that such power is in any way prejudicial to the public.

But if we were to assume that these extraordinary powers were given which ought not in good policy to have been conferred, it would not be such an absurdity as would compel the Courts to exclude from the operation of the law corporations which are clearly embraced in its terms.

Chief Justice Marshall, in *Sturgis* v. *Crowninshield*, 4 Wheat., 202–3, said : " The spirit prevails over the plain letter of the statute only in cases in which the absurdity and injustice of applying the

provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application."

See also *State* v. *Turnpike Co.*, 2 Sneed, 90.

While we do not mean to adopt the language of Chief Justice Marshall as our opinion in this case, still it is an expression showing the great care and hesitancy that should be exercised in passing upon an Act of the Legislature, and pronouncing the same useless and oppressive.

As to the tax imposed by Section 8 of Chapter 25 of the Acts of the Extra Session of 1891, it remains that if foreign corporations are, by the provisions of the Act and compliance therewith, put on the footing of domestic corporations, and for exercise of like privilege treated as such, they must pay the tax in controversy in this case on such domestic corporations. This tax is levied upon all corporations.

The judgment of the Court below will be reversed, and judgment will be entered against the defendant company for tax of $10 and the fees of the Secretary of State, $6, and all costs, for which execution may issue.

Lurton, C. J., dissents.