## MARKWOOD v. SOUTHERN RY. CO.

### (Circuit Court, E. D. Tennessee, N. D. March 2, 1895.)

**CORPORATIONS — CITIZENSHIP — CONSTRUCTION OF STATUTE — REMOVAL OF CAUSES.**

Act Tenn. 1877, c. 31, entitled "An act to declare the terms on which foreign corporations organized for mining * * * may carry on their business * * * in this state," providing (section 1) that such corporations may become incorporated in the state, and carry on the business authorized by their respective charters, and enjoy the rights and do the things therein specified, upon the terms therein declared, and (section 2) that they shall file a copy of their charter in the office of the secretary of state, and (section 3) that "such corporations shall be deemed and taken to be corporations of this state, and shall be subject to the jurisdiction of the courts of this state, and may sue and be sued therein in the mode * * * directed in the case of corporations created * · *· * under the laws of this state"; and Act Tenn. 1891, c. 122, amending the former act so as to include corporations chartered for any purpose, and providing (section 4) that, "when a corporation complies with the provisions of this act, it shall then be, to all intents and purposes, a domestic corporation, and may sue and be sued in the courts of this state, and subject to the jurisdiction of the courts of this state, just as though it were created under the laws of this state,"—do not make such a corporation a corporation of Tennessee; and therefore, being sued in the courts of that state, it may, by reason of its citizenship in the other state, remove the cause to a federal court.

**2. SAME—CONSTRUCTION OF STATUTE.**

A corporation of one state, doing business in another by permission of the latter, does not thereby become a citizen of this state also, unless the language of the act granting permission clearly evinces a purpose to adopt such corporation or to create a new corporation.

**3. SAME.**

To make such corporation of one state a corporation of another state also, the language used must imply creation or adoption, and must, in form and effect, establish between the latter state and such company the same relations as exist between such state and a corporation originally created by that state.

**4. SAME.**

A mere declaration or indication of purpose in the caption or otherwise is not controlling in the interpretation where the operative parts of the statute in effect only prescribe the terms and conditions upon which a foreign corporation is authorized to do business in a state other than that which created it.

Action by C. H. Markwood against the Southern Railway Company. Heard on motion to remand.

Henderson, Jourolman, Welcker & Hudson, W. S. Dickinson, and Kirkpatrick, Williams & Bowman, for plaintiff.

Hacker, Deadrick & Epps and Burrow Bros., for defendant.

CLARK, District Judge. This action for damages for personal injury was brought in the circuit court of Washington county, and removed on defendant's application into the circuit court of the United States for the Northern division of the Eastern district of Tennessee, upon the ground that defendant is a corporation created and organized under the laws of the state of Virginia, and a citizen of that state, and a nonresident of Tennessee. The plaintiff filed a plea to the jurisdiction, setting up, in substance, that under

certain statutes of Tennessee, and compliance with the provisions thereof by the defendant, it "was, and still is, by adoption and domestication, a Tennessee corporation," with averment that this was so at and before the suit was instituted.    To this plea defendant demurred.    No question is made on the form or sufficiency of the pleadings by which the issue is presented, and the court is left to treat, as squarely raised, the question whether the defendant company, admitted to have been originally created by statute of Virginia, has been made a corporation and citizen of Tennessee also, and therefore not entitled to remove the case.    This depends on the effect of the legislation referred to, being the act of the general assembly of the state of 1877 (chapter 31), and the amendatory act of 1891 (chapter 122).    Such parts of the acts as materially affect the matter now under consideration are as follows:

"An act to declare the terms on which foreign corporations organized for mining and manufacturing purposes may carry on their business, and purchase, hold and convey real estate and personal property in this state."

The first section provides that such corporations "may become incorporated in this state, and may carry on in this state the business authorized by their respective charters, or the articles under which they are or may be organized, and may enjoy the rights, and to do the things therein specified, upon the terms and conditions, and in the manner and under the limitation herein declared."

Section 2 requires a copy of the charter to be filed in the office of the secretary of state, and an abstract thereof to be recorded in the office of register in each county where business is to be carried on or lands acquired.

"Sec. 3. Be it further enacted, that such corporations shall be deemed and taken to be corporations of this state and shall be subject to the jurisdiction of the courts of this state, and may sue and be sued therein in the mode and manner that is, or may be, by law directed in the case of corporations created or organized under the laws of this state."

Section 4 confers power to acquire and convey real estate for corporate purposes, and releases the right of escheat.

Section 5 makes the property of the corporation liable for its debts, just as that of natural persons, but provides that resident creditors of the state shall have priority in the distribution of assets or subjection of the same, or any part thereof, to be payment of debts over all simple contract creditors, being residents of any other country or countries, "and also over mortgage or judgment creditors, for all debts, engagements and contracts which were made or owing by the said corporations previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments."    The corporation is then made liable to taxation just as a natural person.

Section 6 grants the right to operate railroads and other methods of transportation to and from mines.

Section 7 limits the time for beginning operations, and provides that the company "shall in good faith continue the same under the powers of said corporation in this said charter or articles of associa-

tion as in this act declared; it being a chief object of this act to secure the opening and development of the mineral resources of the state, and to facilitate the introduction of foreign capital, and upon the failure of any such corporation to commence in good faith to develop and work some portion of its property within this state within one year after filing its said charter or articles of association in the office of the secretary of state, all rights and privileges conferred by this act, shall lapse and become void and of no effect."

Section 8 grants power to establish towns and villages.

"Sec. 9. Be it further enacted, that if any such charter or articles of association, or any part thereof, filed as aforesaid in the office of the secretary of state, should be in contravention or violation of the laws of this state, all such parts thereof as may be found to be in conflict with the laws of this state shall be null and void."

The amendatory act may as well be given in full:

"Section 1. Be it enacted, by the general assembly of the state of Tennessee, that chapter 31 of the Acts of 1877 be so amended and enlarged as that the provisions of said act shall apply to all corporations chartered or organized under the laws of other states or counties for any purpose whatsoever which may desire to do any kind of business in this state.

"Sec. 2. Be it further enacted, that each and every corporation created or organized under or by virtue of any government other than that of this state, for any purpose whatever, desiring to own property or carrying on business in this state of any kind or character, shall first file in the office of the secretary of state a copy of its charter and cause an abstract of same to be recorded in the office of the register in each county in which such corporation desires, or proposes to carry on its business, or to acquire or own property, as now required by section 2 of chapter 31 of Acts of 1877.

"Sec. 3. Be it further enacted, that it shall be unlawful for any foreign corporation to do, or attempt to do, any business or to own or to acquire any property in this state, without having first complied with the provisions of this act, and a violation of this statute shall subject the offender to a fine of not less than $100.00 nor more than $500.00, at the discretion of the jury trying the case.

"Sec. 4. Be it further enacted, that when a corporation complies with the provisions of this act, it shall then be, to all intents and purposes, a domestic corporation, and may sue and be sued in the courts of this state, and subject to the jurisdiction of the courts of this state just as though it were created under the laws of this state.

"Sec. 5. Be it further enacted, that when such corporation has no agent in this state upon whom process may be served by any person bringing suit against such corporation, then it may be proceeded against by attachment, to be levied upon any property owned by the corporation, and publication, as in other attachment cases. But for the plaintiff to obtain an attachment he, his agent or attorney, need only make oath of the justness of his claim, that the defendant is a corporation organized under this act, and that it has no agent in the county where the property sought to be attached is situated, upon whom process can be served.

"Sec. 6. Be it further enacted, that the said chapter 31 of the Acts of 1877, except in so far as the same is amended, enlarged and extended by this act, be and the same is declared to be in full force."

Of course, the word "counties," in the first section, is an error in copying or printing, and should be "countries." It is not controverted, but admitted, that defendant has filed a copy of its charter in the office of the secretary of state, and otherwise complied with this legislation. Whether defendant is a corporation engaged in interstate commerce, and therefore not subject to the provisions of the acts, and whether having voluntarily complied with the law

renders it continuously subject to the provisions and penalties of the statutes, are questions not made in argument. The statutes have been before the supreme court of the state in Young v. Iron Co., 85 Tenn. 189;[1] State v. Phoenix Ins. Co., 92 Tenn. 420, 21 S. W. 893; Lumber Co. v. Thomas, 92 Tenn. 587, 22 S. W. 743; and Manufacturing Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971. But the question now raised was not involved in any of those cases, and has never been decided by that court. The interpretation of the acts, with respect to the point now presented, is left, therefore, to be determined by the rules established by the federal courts. The question of the effect of similar legislation has often been before the United States supreme court, as well as the courts at circuit, and has been much considered. The plaintiff's contention is that the legislation is not merely a license or authority to foreign corporations to carry on business in this state, but that its effect is to make them corporations and citizens of Tennessee in the fullest sense possible. Various difficulties are suggested affecting the validity of the legislation, construed as plaintiff insists it must be. It will be observed that the amendatory act, in its caption, does not purport to do more than extend the original act to all foreign corporations, and both acts stand under the caption of the original act so far as that is important. Whether under the title, expressing the purpose to prescribe terms on which these corporations may do business in the state, it would be germane and competent to create them corporations of Tennessee, and thereby completely change their relations to the state, I do not find it necessary to decide. It is also argued that the statutes, according to the plaintiff's view, would be in violation of the constitution of the state (article 11, § 8), which, among other things, ordains:

"No corporation shall be created, or its powers increased or diminished by special laws; but the general assembly shall provide by general laws, for the organization of all corporations hereafter created, which laws may, at any time, be altered or repealed; and no such alteration or repeal shall interfere with, or divest, rights which have become vested."

The history of legislation on this subject, and the reasons which led up to this provision, occurring for the first time in the constitution of 1870, are well understood. That the legislature should, upon full consideration of the subject, provide, by general laws, for the formation of corporations, and thereby adopt a system, secure uniformity in powers granted, and avoid the confusion and danger attending special legislation, were objects clearly contemplated. This has been done, and these concerns are now classified, and the powers of each class clearly defined and limited, and the right to obtain charters, franchises, and powers extended to all on equal terms. These corporations were multiplying in number and increasing in magnitude as never before. A large part of the business of the country was going into their hands, and particularly the development of the state's material resources. It had come to be well understood that charter powers and franchises, when granted

[1] 2 S. W. 202.

and accepted, became contract rights, and passed under constitutional protection as such, and could not thereafter be revoked, controlled, or restrained, except to a very limited extent, and hence the reservation of the power to alter and repeal, which is carefully guarded by express provision in the general incorporation act, passed under this provision. If a charter obtained under this general law should contain powers not authorized by the statute, it is hardly to be doubted that the charter would be void as to the unauthorized powers. Heck v. McEwen, 12 Lea, 97; Railroad Co. v. Johnson, 3 Baxt. 332. If these statutes are subject to this constitutional restriction, and are to be construed as having made these corporations, created under foreign legislation, also corporations and citizens of Tennessee, and with necessarily all the power and protection belonging to those of the state's own original creation, I think the conclusion that the acts are antagonistic to the constitution is one from which there is no escape. 'There is no attempt to classify these corporations, or to require that their franchises and powers shall conform to the same law which governs those created by the state. Indeed, it cannot be known in advance with what powers a foreign corporation may come to this state, and, with the simple method here provided, become a corporation of the state, and pass at once beyond the power of exclusion from the state's borders, and under the fullest constitutional and legal protection extended to other corporations of the state. It may be safely said, I think, that the ordinary English company, in addition to general powers, possesses all the special powers which belong to a dozen or more corporations formed under the general laws of the state. On the theory that these are now corporations and citizens of this state, and entitled to the same rights, I think serious difficulty would be found in sustaining as valid the arbitrary discriminations made in sections 5 of both the original and amendatory acts. If it be suggested that the constitutional limitation applies only to the original creation of corporations in the state, and that this is general legislation, then far more serious consequences follow. The legislation in question makes no reservation of the right to alter or repeal the charter of any corporation created or adopted by these acts, as required by the constitution; and the provision of the constitution, if self-executing, is so only as to legislation coming within its operation. If the constitutional restraint does not apply, and the statutes are not within its province or purpose, it would seem to follow, necessarily, that when these corporations, with their foreign-granted powers and franchises, have accepted the provisions of these acts, and become citizens and corporations of Tennessee, they pass under the protection of the constitutions, federal and state, against impairment of contract rights, just as before the constitution of 1870, and the power of exclusion, repeal, or material control is gone. A question much like this arose in Railroad v. Vance, 96 U. S. 458, under provision in the Illinois constitution, which, however, differed from the constitution of this state, in the following qualification: "Except for municipal purposes, and in cases where, in the judgment of the general assembly, the objects

of the corporation cannot be attained under general laws." The court, following the decision of the supreme court of the state, held that, when the general assembly passed a special law, it would be presumed to have thought a special law necessary to meet the situation.

Section 9 of the act amounts to no more than a harmless generality, without specific or practical meaning or effect. Putting aside the criminal law, there would remain no laws with which these foreign charters would conflict, except the distinct policy and laws embodied in the constitutional provision, and the general act passed pursuant thereto. To attempt to bring these foreign charters into harmony with this policy is impracticable, and is to admit indirectly the application of the constitution, which is denied directly. Treated as foreign corporations, with the state's power to exclude, revoke license, and prescribe conditions, the legislation is free from difficulty or criticism. However, it is not deemed necessary for the purposes of this case to reason out or positively decide these and other points which suggest themselves in a study of the subject. They are adverted to in passing, for the purpose of observing that I do not think the legislature could have been unmindful of the difficulties surrounding the subject. Nor do I think legislation apparently so simple on its face, and as declared in its title, was designed to be so far-reaching and fundamental in its effect. If so, it is reasonable to suppose that some parts of these acts would have been omitted, and that other legislation needful in such a change of relation would have been enacted; for it is to be borne in mind that all corporations subject to the act are presumed to have complied with its provisions. Young v. Iron Co., 85 Tenn. 189, 2 S. W. 202; Louisville & N. R. Co. v. Mississippi & T. R. Co., 92 Tenn. 681, 22 S. W. 920. And it is established that a company cannot, for any purpose of its own, plead or rely upon failure to comply with the act. Ehrman v. Insurance Co., 1 Fed. 471, and In re Comstock, 3 Sawy. 218, Fed. Cas. No. 3,078. So that theoretically and practically, upon plaintiff's construction of the acts, we have no such thing as a foreign corporation doing business in Tennessee. The proposition would render nugatory all the existing legislation of the state directed to foreign corporations. The distinction between foreign and domestic corporations, it is believed, is still maintained in the revenue laws, and is recognized by the supreme court of the state in a case as late as that of Cumberland Tel. & Tel. Co. v. United Electric Ry. Co., 93 Tenn. 492, 29 S. W. 104, wherein the power in the legislature to revoke a franchise is declared to exist in respect to domestic corporations since the constitution of 1870, and as to a foreign corporation by virtue of the power of exclusion from the state.

But has this legislation effected a change in the citizenship and domicile of these foreign companies? The statutes must be interpreted, if possible, without violence to the language, so as to make them consistent with the constitution and paramount law. This is the rule of both state and federal courts. It has often been decided that corporations, for the purpose of federal jurisdiction,

will be conclusively presumed to be citizens of the state creating them, and that they cannot migrate or change their domicile. Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935; Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 10 Sup. Ct. 1004; Bank v. Earle, 13 Pet. 519. This proposition refers, however, to the want of power in the corporation, of its own motion and by anything it may do, to effect a change in its citizenship; for a corporation created by and a citizen of one state may, by appropriate legislation, be created a corporation also of another state (Railroad v. Vance, 96 U. S. 450; Memphis & C. R. Co. v. State, 107 U. S. 581, 2 Sup. Ct. 432); or adopted as a corporation of such state, with charter and powers, just as organized in the state of its creation (Railroad v. Harris, 12 Wall. 82; Railroad Co. v. Wheeler, 1 Black, 297; Martin v. Railroad Co., 151 U. S. 677, 14 Sup. Ct. 533). It could not be claimed that these statutes invest the companies with any corporate franchises or powers, such as imply creation; and, if the result insisted on has been accomplished, it is by the adoption of these corporations, as they exist under the foreign laws. In Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094, Mr. Justice Miller, delivering the opinion of the court, states and applies the rules of interpretation as follows:

"It does not seem to admit of question that a corporation of one state, owning property and doing business in another state, by permission of the latter, does not thereby become a citizen of this state also; and so a corporation of Illinois, authorized by its laws to build a railroad across the state from the Mississippi river to its eastern boundary, may, by the permission of the state of Indiana, extend its road a few miles within the limits of the latter, or, indeed, through the entire state, and may use and operate the line as one road by the permission of the state, without thereby becoming a corporation or citizen of the state of Indiana. Nor does it seem to us that an act of the legislature conferring upon this corporation of Illinois, by its Illinois corporate name, such powers to enable it to use and control that part of the road within the state of Indiana as have been conferred on it by the state which created it, constitutes it a corporation of Indiana. It may not be easy in all such cases to distinguish between the purpose to create a new corporation which shall owe its existence to the law or statute under consideration and the intent to enable the corporation already in existence under the laws of another state to exercise its functions in the state where it is so received. The latter class of laws are common in authorizing insurance companies, banking companies, and others to do business in other states than those which have chartered them. To make such a company a corporation of another state, the language used must imply creation or adoption in such form as to confer the power usually exercised over such corporations by the state or by the legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the state conferring such powers."

In Goodlett v. Railroad, 122 U. S. 405, 7 Sup. Ct. 1254, this entire statement is quoted with approval as expressing the established doctrine on the subject. This case involved the construction of an act of the general assembly of Tennessee applicable to the Louisville & Nashville Railroad Company alone, and embraced no other subject. The title of the act was: "An act to incorporate the Louisville and Nashville Railroad Company." The act is set out in full in the opinion, and need not be here repeated. Mr. Justice Harlan, speaking for the court, said:

"Looking, then, at the body of the Tennessee act of December 4, 1851, we find no language clearly evincing a purpose to create a new corporation, or to adopt one of another state, in such form as to establish the same relations, in law, between the latter corporation and the state of Tennessee, as would exist in the case of one created by that state. The act grants to a named company, 'incorporated by the legislature of Kentucky,' a right of way, within designated limits, for the construction of a railroad, with all the rights, powers, and privileges in its original and amended charter, 'except as further provided in this act.' The remaining sections of the act are, in form, additions and alterations of the charter of the Kentucky corporation; but, in effect, they only prescribe the terms and conditions upon which that corporation was given the right of way, and permitted to construct a railroad and exercise its powers in Tennessee."

And further on:

"Taking the whole of that act together, we are satisfied that it was not within the mind of the legislature of Tennessee to create a new corporation, but only to give the assent of that state to the exercise by the defendant, within her limits, and subject to certain conditions, of some of the powers granted to it by the state creating it. This construction is not, if indeed it could be, affected by the subsequent legislation of Tennessee. While the titles of the acts of January 10, 1852, December 15, 1855, and March 20, 1858, give some slight support to the position taken by the plaintiff, the acts themselves do not militate against the conclusions here expressed. In legal effect, they only impose other terms and conditions than those prescribed in the original act upon the exercise by the defendant, within Tennessee, of the powers and privileges conferred by its charter, as granted by Kentucky. Upon the authority of the cases cited, and for the reasons herein stated, we are of the opinion that the Louisville and Nashville Railroad Company is a corporation of Kentucky, and not of Tennesee, and, consequently, that the action was removable, upon its petition and bond, into the circuit court of the United States."

A critical analysis of the act is made, the previous cases reviewed, and the opinion is an instructive one. It is sufficient now to say that I think the act went much further to support the contention that the corporation had been adopted or created a corporation of Tennessee than the legislation now under consideration.

In all the cases examined, the question arose in reference to a particular statute applicable to a named company only, as distinguished from a general act or acts of the character now in question. It would seem that such distinction has a material bearing on the interpretation. In respect to a special act passed in regard to an existing company whose powers and purposes are well known, the general assembly might well be understood as intending to make such company a domestic corporation, and invest it with rights as such; while a similar law extending to all corporations existing or hereafter created would not justify such conclusion. Under the general law, nothing could be known as to the special powers or objects of the companies to be thus made corporations and citizens of the state. The doctrine of the cases of Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co. and Goodlett v. Railroad is to the effect that a statute of the character now considered will not be held to create or adopt a corporation as distinguished from granting license or authority, unless the purpose to do so is evinced in clear and unmistakable terms, so that the act must necessarily be so construed. And this was said in respect to a special or par-

ticular statute in the sense above indicated. This and all the cases are to the effect that a mere declaration in the title or body of the act is not sufficient to make the foreign corporation also a domestic one, nor can the mere use of general terms do so. The efficient and operative terms of the act must be sufficient in force and effect to accomplish the result. It requires more than a formal, general statement. Taking these acts together, and looking at them as a whole, I think the purpose and effect were to subject these corporations to the jurisdiction and process of the state courts as domestic ones, to bring them within the power of taxation, and that there was no purpose beyond this, except the main purpose which the act, in section 7, declares for itself. If the purpose was to make these companies corporations of this state, I think the legislation falls short of giving effect to such purpose. Any general or formal terms and phrases in the act are limited and restrained by specific terms in the same section, and by the general effect and purpose of the acts taken as a whole, and this rule applies particularly to section 3 of the original and section 4 of the amendatory act. No reason can be assigned for an intention by the general assembly to do more than this, unless it was to defeat jurisdiction of the United States courts, and this would be to impute to the acts a purpose which would render them invalid if expressed. Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931.

I am aware that my predecessor, the Honorable D. M. Key, in cases involving this question, uniformly held that this legislation had effected no change in the citizenship of the foreign corporations, and had left federal jurisdiction unaffected. It is well known that Judge Key gave to questions of jurisdiction the most conservative, thoughtful consideration, and this, with his long experience and eminence as a judge, both state and federal, give to his opinion great weight in the determination of the question.

In view of what has been said, and upon the authority of the cases cited, as well as the cases of Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 10 Sup. Ct. 1004, and Martin v. Railroad Co., 151 U. S. 673, 14 Sup. Ct. 533, I am of the opinion that the case was properly removed to this court, and the motion to remand is therefore overruled.