MEMPHIS STREET RAILWAY COMPANY *v.* WILLIAM G.
BYRNE.

(*Jackson.*   Special September Term, 1907.)

1. **CONSTITUTIONAL LAW.** Provision as to the oneness of the
   subject to be expressed in the title is mandatory.

   The constitutional provision (art. 2, sec. 17) that "no bill shall
   become a law which embraces more than one subject, that sub-
   ject to be expressed in the title," is mandatory.   (*Post, pp.*
   286, 287.)

   Case cited and approved:   Cannon v. Mathes, 8 Heisk., 519.

2. **SAME.** Object of provision as to the oneness of the subject to
   be expressed in the title; liberal construction.

   The object of the constitutional requirement (art. 2, sec. 17) as
   to the oneness of the subject to be expressed in the title of
   each bill is to give notice of the nature of the proposed legis-
   lation and to prevent surprise and fraud in the enactment of
   laws, and to prevent improper and unlawful combinations be-
   tween the members of the general assembly, resulting in the
   passing of statutes having no natural connection.   However,
   this provision is to be liberally construed so as not to unne-
   cessarily embarrass legislation.   (*Post, pp.* 287, 288.)

   Cases cited and approved:   Cannon v. Mathes, 8 Heisk., 519;
   Luehrman v. Taxing District, 2 Lea, 428; Morrell v. Fickle, 3
   Lea, 81; Truss v. State, 13 Lea, 312; Frazier v. Railroad, 88
   Tenn., 158.

3. **SAME.** A "general title" of an act defined.

   A "general title" to an act is one which is broad and compre-
   hensive, and covers all legislation germane to the general sub-
   ject stated.   The title may cover more than the body, but it
   must not cover less.   It need not index the details of the act
   nor give a synopsis thereof.   (*Post, pp.* 288-291.)

   Cases cited and approved:   Cannon v. Mathes, 8 Heisk., 519;
   State v. Yardley, 95 Tenn., 555; State, ex rel., v. Brewing Co.,
   104 Tenn., 718.

Railroad v. Byrne.

**4. SAME. A "restrictive title" of an act defined.**

A "restrictive title" to an act is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation, and under such a title, the body of the act must be confined to the particular subject expressed in the limited title. (*Post, pp.* 289-291.)

Cases cited and approved: Hyman v. State, 87 Tenn., 109, 112, 113; State v. Bradt, 103 Tenn., 591; State, ex rel., v. Brewing Co., 104 Tenn., 718.

**5. SAME. Rules as to the oneness of the subject to be expressed in the title apply to amendatory statutes.**

The rules as to the oneness of the subject of legislation to be expressed in the title apply to amendatory statutes. Such a statute incorporates itself with the original law, and the two become one statute, as fully and completely as if enacted at one time in one bill, and the matter of the amendment must not only be germane to the body of the original act, in order to avoid violating the one subject mandate of the constitution, but, in the absence of an enlargement of the title of the latter act, it must come within the title of the original statute and be germane to the subject there expressed, in order to comply with the other mandate that the subject be expressed in the title. If it be otherwise in either particular, it is void. (*Post*, p. 291.)

Cases cited and approved: Hyman v. State, 87 Tenn., 109; Goodbar v. Memphis, 113 Tenn., 23.

**6. SAME. Rule favoring the construction to sustain the statute applies to the title.**

The rule of construction that every intendment and presumption is in favor of the constitutionality of a statute, and that every doubt must be solved so as to sustain it, and where it is subject to two constructions, that which will sustain its constitutionality must be adopted, is applicable in the interpretation of titles. (*Post, pp.* 291, 292.)

Cases cited and approved: Manufacturing Co. v. Falls, 90 Tenn., 466; State, ex rel., v. Brewing Co., 104 Tenn., 718.

7. **STATUTES.** Preamble considered in ascertaining the intention of the legislature.

The preamble of a statute, while not a part of it and not controlling, may be considered in connection with the condition of public affairs, contemporary history, and other statutes in relation to the same subject-matter, in ascertaining and determining the intention of the legislature. (*Post, p.* 297.)

Acts cited and construed: Acts 1895, ch. 76.

Case cited and approved: McElwee v. McElwee, 97 Tenn., 658.

8. **SAME.** Amendment of statute creating court of chancery appeals so as to create the court of civil appeals.

Acts 1895, ch. 76, creating the court of chancery appeals and defining its jurisdiction, and Acts 1907, ch. 82, amending the former act so as to change the name of the court to that of the court of civil appeals and to increase its jurisdiction, relate to but a single subject, are germane, and the latter act is a proper amendment of the former. Both acts have but one general object or purpose, one single subject, however multitudinous may be the means or instrumentalities provided for effecting that purpose. (*Post, pp.* 292-300, and especially 299, 300.)

Acts cited and construed: Acts 1895, ch. 76; Acts 1907, ch. 82.

Cases cited and approved: Cannon v. Mathes, 8 Heisk., 504; Morrell v. Fickle, 3 Lea, 79; Frazier v. Railroad, 88 Tenn., 157; State v. Brown, 103 Tenn., 449; State v. Hamby, 114 Tenn., 364.

9. **SAME.** Object and purpose of an act is the same as the subject thereof.

The object and purpose of an act, as a general thing, is the subject of it, in the sense of the mandate of the constitution (art. 2, sec. 17), as to the subject of legislative bills. (*Post, p.* 300.)

Railroad v. Byrne.

10. **SAME. Same. Subject of act creating court of chancery appeals covers subject of the amendatory act creating the court of civil appeals.**

The subject expressed in the title of Acts 1895, ch. 76, creating the court of chancery appeals, is sufficiently broad and comprehensive to cover the common object and purpose of itself and of Acts 1907, ch. 82, amending the former so as to create the court of civil appeals. (*Post, pp.* 300-310.)

Acts cited and construed:  Acts 1895, ch. 76; Acts 1907, ch. 82.

Cases cited and approved:  Cannon v. Mathes, 8 Heisk., 504, 519; Morrell v. Fickle, 3 Lea, 79; Jackson v. Nimmo, 3 Lea, 597; Truss v. State, 13 Lea, 312; Ryan v. Terminal Co., 102 Tenn., 127; State v. Brown, 103 Tenn., 449.

11. **SAME. Name or style of a court does not limit or confine its object or jurisdiction.**

The name or style of a court does not limit the object of the court or the jurisdiction to be conferred upon it.  There is a broad distinction between the purpose to create a court and the jurisdiction to be conferred upon that court, and the two must not be confused. (*Post, pp.* 301, 311.)

Case cited and approved:  Jackson v. Nimmo, 3 Lea, 597.

12. **SAME. Acts 1907, ch. 82, amending Acts 1895, ch. 76, does not depend upon title of original act, but upon its own title.**

The validity of Acts 1907, ch. 82, amending Acts 1895, ch. 76, which created the court of chancery appeals, by increasing the size and jurisdiction of such court and changing its name, does not depend upon the scope of the title of the original act, but upon its own title. (*Post, p.* 307.)

13. **SAME. Restrictive title of original act may be amended and enlarged by title of amendatory act.**

While a general title covering one entire subject cannot be enlarged by an amendatory act so as to include another subject or additional matter, because thereby two subjects would be introduced in the body of the act, nevertheless, a restrictive

Railroad v. Byrne.

title may be enlarged by the title of an amendatory act, so as to allow legislation germane to the body of the original act. If the title of the original act could have been broad enough to cover the matter' of the amendment, the title of the amendatory act may so amend it, on the principle that whatever could have been done originally can be done by amendment. (*Post*, *pp.* 307-310.)

Cases cited and approved: Hyman v. State, 87 Tenn., 109; State v. Algood, 87 Tenn., 163; Goodbar v. Memphis, 113 Tenn., 35; Galloway v. Memphis, 116 Tenn., 747.

14. **SAME.** Amendment contained in Acts 1907, ch. 82, as to court of chancery appeals is properly expressed in its title.

The subject of the amendment contained in Acts 1907, ch., 82, amending Acts 1895, ch. 76, which created the court of chancery appeals, so as to increase the number of judges of the court, to change its name, and to increase its jurisdiction, and further limit the jurisdiction of the supreme court, was properly expressed in the title of the amendatory act. (*Post*, *p.* 310.)

15. **SAME.** Acts 1907, ch. 82, is amendatory as to court of chancery appeals, and does not create a new court.

While Acts 1907, ch. 82, changes the name of the court of chancery appeals, increases its judicial force, increases its jurisdiction and powers, and provides for their exercise in a manner which that court could not exercise under the act creating it, still said act is not an independent and complete scheme of legislation, and does not establish a new court. (*Post*, *pp.* 311-315.)

16. **SAME.** Implied repeals are not favored.

Acts 1907, ch. 82, is amendatory as to court of chancery appeals, created by Acts 1895, ch. 76, and is not in irreconcilable conflict with the said prior act, and does not repeal it by implication. (*Post*, *pp.* 314-317.)

Railroad v. Byrne.

Cases cited and approved:   Frazier v. Railroad, 88 Tenn., 163; Fisher v. Baldridge, 91 Tenn., 418; Blaufield v. State, 103 Tenn., 593; McCampbell v. State, 116 Tenn., 107.

Case cited and distinguished:   Malone v. Williams, 118 Tenn., 390.

17. **SUPREME COURT.** Jurisdiction and powers under the constitution.

The supreme court, established and vested with its jurisdiction and powers by the constitution, not to be interfered with by the other branches of the government, is the highest judicial tribunal in the State. Its adjudications are final and conclusive upon all questions determined by it, save those reserved to the supreme court of the United States for review by it. (*Post, p.* 320.)

Cases cited and approved:   Miller v. Conlee, 5 Sneed, 432; Dodds v. Duncan, 12 Lea, 731; State v. Gannaway, 16 Lea, 124.

18. **SAME.** Same. Jurisdiction is appellate only with power to enforce that jurisdiction.

The jurisdiction of the supreme court is appellate only, with the power to enforce that jurisdiction.   (*Post, p.* 320.)

Constitution cited and construed:   Art. 6, sec. 2.

Cases cited and approved:   State v. Bank, 5 Sneed, 573; Memphis v. Halsey, 12 Heisk., 213; State v. Gannaway, 16 Lea, 124.

19. **SAME.** Supreme court's ultimate revisory power cannot be unreasonably interfered with.

The legislature may, by the establishment of courts of intermediate appellate jurisdiction, or other appropriate legislation, limit and restrict the right of litigants to resort to the supreme court of the State, and regulate the mode of doing so, but not so as to interfere unreasonably with, or to embarrass, its ultimate revisory powers; and it is always for the supreme court to decide when its constitutional jurisdiction is encroached upon. (*Post, pp.* 320, 321.)

Railroad v. Byrne.

Cases cited and approved:   Miller v. Conlee, 5 Sneed, 432;   State
v. Bank, 5 Sneed, 573;  Ward v. Thomas, 2 Cold., 565;  Newman
v. Scott Co., 1 Heisk., 787;  Hundhausen v. Insurance Co., 5
Heisk., 704;  Chestnut v. McBride, 6 Bax., 95;  McElwee v. Mc-
Elwee, 97 Tenn., 657;  Chattanooga v. Keith, 115 Tenn., 589.

20. **COURT OF CIVIL APPEALS.**  Appellate jurisdiction defined.
The primary appellate jurisdiction of the court of civil appeals
embraces all cases brought up from courts of equity and chan-
cery courts, involving not more than one thousand dollars, and
all cases brought up from the circuit and common law courts,
except cases involving constitutional questions, election con-
tests, and State revenue and ejectment suits.   (*Post, pp.* 317-
333.)

Acts cited and construed:   Acts 1907, ch. 82, sec. 7.

21. **SAME.**  Same.  Appellate jurisdiction in supreme court in case
involving constitutionality of statute creating court of civil ap-
peals.
When the constitutionality of the statute creating the court
of civil appeals is involved in an appeal that would otherwise
lie to that court, the appeal may be taken directly to the su-
preme court, and it may there be tried and finally determined.
(*Post, pp.* 317, 318, 334-339.)

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
County.—A. B. Pittman, Judge.

J. C. Bradford and E. E. Wright, for Railroad.

Bell, Terry, Anderson & Bell, for Byrne.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This is an action brought by William G. Byrne against the Memphis Street Railway Company in the circuit court of Shelby county to recover damages for the alleged wrongful action of the defendant in refusing to transport him upon one of its cars.

The right of the plaintiff to recover depends upon the constitutionality of a statute of Tennessee, which is assailed by the defendant. The case was tried March 30, 1907, and there was a verdict and judgment in favor of the plaintiff for $50, and the defendant prayed and was granted an appeal in the nature of a writ of error to this court. The case is now before the court upon a motion, joined in by both parties, to have it docketed and here tried and determined.

The question now presented is one of jurisdiction. The trial and judgment in the circuit court were had after chapter 82 of the Acts of 1907, amending chapter 76 of the Acts of 1895, creating the court of chancery appeals, was enacted and approved. By that statute the name of that court was changed to the "court of civil appeals," the number of its judges increased to five, and its jurisdiction extended, among other things, to the review of civil cases tried in the circuit and common-law courts of the State. The parties, however, insist that they have a right to a trial in this court upon direct proceedings in error, without resort primarily to the court of civil appeals. We will proceed to dis-

pose of the grounds upon which this right is asserted.

The first contention is that the act purporting to amend that establishing the court of chancery appeals, now the court of civil appeals, and extending its jurisdiction, is unconstitutional and void, because it violates article 2, section 17, of the constitution of the State, providing that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

While counsel for plaintiff and defendant agree in this contention, we must determine it upon its merits, since statutes which are constitutional and valid cannot be disregarded, nor jurisdiction conferred by consent.

The precise objection to the act is that the subject is not expressed in the title. It is twofold, and may be stated as follows:

(1)   That the title to the original act (chapter 76 of the Acts of 1895) is restrictive, and confines the subject there expressed to the establishment of a court for the review of causes appealed from the chancery courts of the State; and, therefore, the provisions of the amendatory act, extending the jurisdiction of that court to the review of cases brought from circuit and common-law courts, are not germane, but foreign, to it.

(2)   That the subject expressed in the title of chapter 82, Acts 1907, is the amendment of chapter 76 of the Acts of 1895, creating the court of chancery appeals, while the body of it is a new and complete scheme of

legislation, establishing a new and distinctly different. court, with entirely different jurisdiction and powers;. that instead of amending the former act, by implication it repeals it.

If either of these contentions is sound, the act is. void, and must be so held. The particular part of the provision of the constitution here invoked, that no bill shall become a law which embraces more than one sub-ject, that subject to be expressed in the title, is man-datory, and all legislation, to be valid, must comply with it. This was held by this court in the first case in which this provision came before it for construction, and has been adhered to in all subsequent cases. *Cannon* v. *Mathes,* 8 Heisk., 519. The object of the provision re-quiring the subject to be expressed in the title is that members of the general assembly and the public may have notice of the nature of the proposed legislation. and surprise and fraud in the enactment of laws pre-vented; and that of the further provision, that the bill shall embrace but one subject, to prevent improper and unlawful combinations between the members of the general assembly, resulting in the passing of statutes which have no natural connection and would in sep-arate bills fail of enactment. It is liberally construed, in order that the general assembly may not be unnec-essarily embarrassed in the exercise of its legislative powers and functions, and whatever is sufficient to effect its object will be held to be a compliance with this mandate of the organic law, and the legislation in

this respect valid. *Cannon* v. *Mathes,* supra; *Morrell* v. *Fickle,* 3 Lea, 81; *Truss* v. *State,* 13 Lea, 312; *Luehrman* v. *Taxing District,* 2 Lea, 428; *Frazier* v. *Railway Co.,* 88 Tenn., 158, 12 S. W., 537.

Titles to statutes may be general or restrictive, or, in other words, broad or narrow, since the legislature in every case has the right to determine for itself how comprehensive shall be the object of a statute, and it also has a wide discretion in the particularity of the title selected to express it, provided that, by a fair construction, such title complies with the constitutional provision in question.

A general title is one which is broad and comprehensive, and covers all legislation germane to the general subject stated. It is not an objection that it covers more than the subject of the body of the act, but it must not cover less. It is not necessary that it index the details of the act, nor give a synopsis of the means by which the object of the statute is to be accomplished. All matters which are germane to the subject may be embraced in one act. The scope of a general title is defined in one case in these words:

"The true rule of construction, as fully established by the authorities, is that any provision of the act directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith, and not foreign thereto, should be held to be embraced in it." *Cannon* v. *Mathes,* supra.

And in another it is said: "Where the title of a

legislative act expressed a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title." *State* v. *Yardley,* 95 Tenn., 555, 32 S. W., 481, 34 L. R. A., 656.

A restrictive title is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation. When this is done, notwithstanding a general title could have been adopted, which would have covered the entire subject, and authorized legislation upon the whole of it, the body of the act must be confined to the particular portion of it expressed in the limited title.

The case of *Hyman* v. *State,* 87 Tenn., 112, 9 S. W., 372, 1 L. R. A., 497, is the leading case in the State upon this question. There this is quoted with approval from Cooley on Constitutional Limitations:

"The legislature may make the title to an act as restrictive as they please. It is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the bill has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the con-

stitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been more comprehensive, if in fact the legislature have not seen fit to make it so."

And in *State* v. *Bradt,* 103 Tenn., 591, 53 S. W., 944, it is said:

"It is well settled that an act may be limited to a particular part or branch of a general subject by a restrictive title, and that legislation under such a title, to be good, must be confined within the limitations prescribed."

The law in relation to general and restrictive titles is well expressed by Mr. Justice Caldwell in *State, ex rel.,* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 728, 729, 59 S. W., 1033, 78 Am. St. Rep., 941. He says:

"The title of a legislative bill may be either narrow and restricted, or broad and general, as the members of the general assembly may prefer, and, whether it be in the one form or the other in a given instance, all legislation that is germane to the subject as expressed in the title is within the title and permissible under it; but, of course, much that might be germane under the latter class of titles could not be so under the former.

"If the title adopted be narrow and restricted, carving out for treatment only a part of a general subject, the legislation under it must be confined within the same limits (*State* v. *Bradt,* 103 Tenn., 584, 53 S. W.,

942; *Hyman* v. *State,* 87 Tenn., 109, 113, 9 S. W., 372, 1 L. R. A., 497; Cooley, Const. Lim. [5th ed.], 179) ; and if it be broad and general, the legislation under it may have a like scope.

"In every instance the enactment must come within the title, but in no case is it required to cover the whole domain within the title. The constitution forbids that an enactment shall go beyond the limits of its title, but there is no requirement that it shall completely fill it. Our statute books afford numerous instances of somewhat meager enactments under ample titles, and there are perhaps but few of those with broad and general titles that would not. admit of some additional provision."

These rules apply to amendatory statutes. Such a statute incorporates itself with the original law, and the two become one act, as fully and completely as if enacted at one time in one bill, and the matter of the amendment must not only be germane to the body of the original act, in order to avoid violating the one-subject mandate of the constitution, but, in the absence of an enlargement of the title of the latter act, it must come within the title of the original statute and be germane to the subject there expressed, in order to comply with the other mandate that the subject be expressed in the title. If it be otherwise in either particular, it is void. *Hyman* v. *State,* supra; *Goodbar* v. *Memphis,* 113 Tenn., 23, 81 S. W., 1061.

The familiar canon of construction, that where the

constitutionality of a statute is called in question, every intendment and presumption is in its favor, and every doubt must be solved so as to sustain it, and where it is subject to two constructions, that which will sustain its constitutionality must be adopted, is applicable in the interpretation of titles. *Cole Manufacturing Co.* v. *Falls*, 90 Tenn., 466, 16 S. W., 1045; *State, ex rel.*, v. *Schlitz Brewing Co.*, 104 Tenn., 718, 59 S. W., 1033, 78 Am. St. Rep., 941.

We will now apply these general principles and rules to the legislation here assailed, and determine whether or not it is subject to the objections urged against it. This will require a somewhat lengthy statement of the titles and bodies of the act creating the court of chancery appeals and the one purporting to be an amendment of it.

The title of chapter 76 of the Acts of 1895 is in these words:

"An act to establish a court of chancery appeals; to define its jurisdiction and powers; to regulate the appointment and election and fix the salaries of the judges thereof; to prescribe the duties and fix the compensation of the clerks and marshals thereof; and to limit the jurisdiction of the supreme court in regard thereto."

The first section enacts that "a court of chancery appeals be and the same is hereby established, to be composed of three judges learned in the law." The remainder of this and sections 2, 3, 4, 5, 6, 7, 8, 9, 10,

and 13 relate to the qualifications, salary, appointment, and election of judges of the court, the filling of vacancies in this office, the rules of practice in the court, and provide for clerks and marshals and their compensation, and fix the regular sessions of the court, and authorize special sessions.

Section 11 relates to the jurisdiction of the court, and is as follows:

"Sec. 11. Be it further enacted, that the jurisdiction of said court of chancery appeals shall be appellate only, and shall extend to all such equity causes (except those involving State revenue) now and hereafter pending in the supreme court as may be assigned to its dockets, and provided in section 14 of this act; the findings of fact of said court of chancery appeals shall, in all cases, be reduced to writing, and be conclusive, and the jurisdiction of the supreme court shall not extend thereto; but from the decision of said court of chancery appeals, upon questions of law, appeals in the nature of writs of error, or writs of error, may be taken to the supreme court without additional security within thirty days, the former by the entry of a prayer therefor on the minutes of said court, and the latter by having the transcript filed in the supreme court and giving notice to the opposite party or his solicitor of record, and such appeals in the nature of writs of error or writs of error shall be tried in the supreme court upon the same transcripts, together with said written findings of fact. Said court of chancery appeals shall render judgment or de-

cree in all causes assigned to it, upon which, unless removed to the supreme court as herein prescribed, final process may issue returnable as in case of like process issued upon the judgments or decrees of the supreme court."

Section 12 makes it a court of record, and provides that its judgments and decrees shall be a lien upon the debtor's land from the time the same shall be rendered to the same extent as are the judgments and decrees of other courts of record in this State.

The title of the amendatory statute, chapter 82 of of the Acts of 1907, is as follows:

"An act to amend chapter 76 of the Acts of the general assembly of Tennessee, entitled 'An act to establish a court of chancery appeals; to define its jurisdiction and powers; to regulate the appointment and election and fix the salaries of the judges thereof; to prescribe the duties and fix the compensation of the clerks and marshals thereof; and to limit the jurisdiction of the supreme court in regard thereto,' passed April 24, 1895, and approved April 29, 1895, so as to increase the number of judges of said court of chancery appeals, to change its name, to increase its jurisdiction, and to further limit the jurisdiction of the supreme court, and to repeal all laws or parts of laws in conflict with this act."

By sections 1, 2, 3, and 4, the number of judges of the court of chancery appeals is increased to five and

provision made for the appointment and election of the two additional judges.

Section 5 prescribes when and where the sessions of the court shall be held.

Section 6 changes the name of the court to that of the court of civil appeals.

Section 7 confers further jurisdiction upon the court, and is in these words:

"Sec. 7.   Be it further enacted, that the jurisdiction of said court of civil appeals shall be appellate only, and shall extend to all cases brought up from courts of equity or chancery courts, except cases in which the amount involved, exclusive of costs, exceeds one thousand dollars, and except cases involving the constitutionality of the statutes of Tennessee, contested elections for office, State revenue, and ejectment suits, and to all civil cases tried in the circuit and common-law courts of the State, in which appeals in the nature of writs of error, or writs of error, may be applied for, for the purpose of having the action of the said trial courts reviewed.   In all cases in which appellate jurisdiction is herein conferred upon said court of civil appeals, the appeals and appeals in the nature of writs of error from the lower court shall be taken directly to said court of civil appeals; and said court or any judge thereof is hereby given the same power to award and issue writs of error, *certiorari* and *supersedeas,* which the supreme court has heretofore had in such cases, returnable to said court of civil appeals.   The

practice in such cases in said court shall be the same as is now prescribed by law for the supreme court. In all cases in which appellate jurisdiction is not conferred by the terms of this act upon said court of civil appeals, appeals therefrom shall be direct to the supreme court, and in such cases writs of error, *certiorari* and *supersedeas* shall be issued by and made returnable to the supreme court, as is now provided by law; and in such cases the supreme court shall have exclusive jurisdiction, and shall try and finally determine the same, and shall not, after this act takes effect, assign the same for trial by said court of civil appeals."

Section 8 provides for the review of the judgments and decrees of the court by the supreme court by *certiorari;* that being the only mode in which it can be done.

Section 9 relates to cases in which appeals were perfected from chancery courts before the act became effective.

Section 10 enacts that "except as amended by this act chapter 76 of the Acts of 1895 shall remain in full force."

We do not understand it to be insisted that these statutes relate to distinct and separate subjects, and that when the latter is considered as incorporated in the body of the first two subjects are embraced. Such a contention could not be sustained. We think it clear that the subject of the enacting parts of both acts is the establishment of a court of intermediate appellate ju-

Railroad v. Byrne.

risdiction, to relieve the congested dockets of this court, and thus make effective the constitutional mandate that courts shall be open and justice administered without delay. This is their single and common purpose. It was the sole reason for their enactment. That it was the object of the first distinctly appears from its preamble, which, while not a part of the statute and not controlling, may be looked to and considered in ascertaining the intention of the general assembly, along with other statutes enacted in relation to the same subject-matter, as well as the then condition of public affairs and contemporary history.

And it was so held by this court in the case of *McElwee* v. *McElwee*, 97 Tenn., 658, 37 S. W., 562, in sustaining the constitutionality of that act. It is there said:

"As this is the first occasion upon which the constitutionality of this act has been called in question, we deem it proper to enter somewhat into the history of its passage and the creation of the court of chancery appeals, and the reason and occasion for its establishment. Since the constitution of 1870, and, indeed, before that time, the dockets of the supreme court had been overburdened with appeals, until it became impossible to properly dispose of them. Various expedients were resorted to to give the relief desired, and to afford to litigants the prompt hearing which they were entitled to under the constitution and bill of rights. Intermediate courts have from time to time been created

and vested with power more or less extensive—such as
the commission court, the court of referees, the arbi-
tration court—and, under the constitution of 1870, the
number of judges of this court was temporarily in-
creased to six, so as to enable it to sit in two sections.
These were, however, at best, but temporary expedients,
and, while the courts thus created did much labor and
accomplished a great deal towards effecting speedy
trials of causes appealed, still, being only temporary
and limited as to time, and to some extent as to power,.
they could not accomplish all that was desired, even
though they may have exceeded popular expectations.
But all these courts have passed away, and live only in
the history of the State's jurisprudence.   The volume
of litigation has not, however, decreased.   There are
nearly fifty inferior courts of circuit, criminal, chan-
cery, and special jurisdiction, from which appeals lie
to this court, besides the different county courts in
the various counties of the State, from which, in many
cases, appeals lie direct to this court.   The consequence
is that the task of disposing of the causes upon the dock-
ets of the supreme court was more than could be ac-
complished by that court, although more than 1,200
cases per annum were disposed of.   There, is a
limit to human capacity for work and to human en-
durance of toil.   When that limit was reached, the
question simply resolved itself into whether causes
would be allowed to accumulate and incumber the
dockets, or some other means be devised to hear and

dispose of them. The act has been referred to as a measure for the relief of the supreme court. This is a misnomer and a misconception. The act does not relieve the supreme court or its judges from labor; it was not so intended, but to relieve litigants from the delay which had become unavoidable from overcrowded dockets."

The court established by the act of 1895 contributed to this general purpose. It only had jurisdiction of cases appealed to this court from the chancery courts of the State, it is true; but the relief it afforded in the final disposition of these cases enlarged the time of the court for the trial and consideration of cases brought up from the circuit, common-law, and criminal courts of the State. This limited relief was, after the lapse of several years, deemed insufficient, it is to be presumed, by the general assembly; for such is the well-known fact, and the last act was passed providing for the review of other classes of litigation. The general purpose of both acts was to facilitate the final disposition of all classes of litigation in this court, and the provisions of both are the means by which this general purpose was undertaken to be effected. The purposes and objects of the two acts are germane. They are the same, and constitute but one subject. They could have been embraced in one act under a proper title, and therefore the latter is proper matter of amendment of the first. When a statute has but one general object or purpose, the subject is single, however multitudinous

may be the means or instrumentalities provided for effecting that purpose. *State* v. *Brown,* 103 Tenn., 449, 53 S. W., 727; *Morrell* v. *Fickle,* 3 Lea, 79; *State* v. *Hamby,* 114 Tenn., 364, 84 S. W., 622; *Cannon* v. *Mathes,* 8 Heisk., 504; *Frazier* v. *Railroad Co.,* 88 Tenn., 157, 12 S. W., 537.

The object and purpose of the act, as a general thing, is the subject of it, in the sense of this mandate of the constitution. We have, then, only to determine whether or not the subject expressed in the title of the act of 1895 is broad and comprehensive enough to cover the common object and purpose of it and the present act. We think it is. It is entitled "An act to establish a court of chancery appeals; to define its jurisdiction and powers; to regulate the appointment and election and fix the salaries of the judges thereof; to prescribe the duties and fix the compensation of the clerks and marshals thereof; and to limit the jurisdiction of the supreme court in regard thereto." The subject here expressed is the creation of an intermediate appellate court. This is clearly indicated by the language used. It is sufficient to give notice to the members of the legislature and the public that such a court is intended to be established, which is all that the constitution requires to be done. That the court was styled a court of chancery appeals could not be understood as limiting the object of the court or the jurisdiction to be conferred upon it, because by the succeeding section of the title notice is given that the act will contain a

provision defining the jurisdiction of the court to be established. The dominant purpose which the title expresses is the intention to create a court of intermediate appellate jurisdiction, and not the nature and extent of the jurisdiction to be conferred upon that court; that being a detail to be stated and defined in the body of the act. There is a broad distinction between the purpose to create a court and the jurisdiction to be conferred upon that court, and the two must not be confused. This is strongly stated by Mr. Justice Freeman in the case of *Jackson* v. *Nimmo,* 3 Lea, 597, which involved the constitutionality of the act passed, in 1877, conferring on chancery courts of the State jurisdiction of certain actions which theretofore was vested exclusively in the circuit and other courts of common-law jurisdiction. Speaking for the court he said:

"The distinction attempted to be pointed out is between the existence of the court as a concrete fact and the jurisprudence which that court administers by the agencies of its organism. . . . The court must necessarily be existent before it can exercise jurisdiction at all; so that it is a separate and independent thing, both in thought, logic, and fact, from the matter of its jurisdiction. This may be more or less extensive, may fluctuate, be enlarged or diminished, and yet the court remains, as we have said, the same organic thing, ready to do the work that may be assigned to it, whether much or little."

This construction of the title of the original act is well supported by the previous adjudications of this court. We will refer to only a few of them. The title of the act involved in the case of *Cannon* v. *Mathes,* supra, was in these words: "An act to fix the State tax on property." Acts 1870, p. 120, c. 74. The first section of the act levied a State tax of forty cents on every $100 worth of property; the second section repealed a former act upon the same subject; the third section prescribed the manner and order in which the comptroller and the treasurer were authorized to dispose of .public money; and section 4 increased the tax on privileges fifty per cent. The objection to the bill was that the title did not express its subject and that the body contained two subjects. The court, speaking through Chief Justice Nicholson, after stating the rules of construction to be applied in such cases, held that the general subject of the act was State revenue, that all of its provisions related to this subject, and that it was sufficiently expressed in the title. The act was sustained.

The case of *Morrell* v. *Fickle,* supra, is very much in point. The general assembly of 1879 passed an act entitled "An act to establish a chancery and law court at Bristol, in. the county of Sullivan." Acts 1879, p. 161, c. 127. The first nine sections of the enacting part of the act provided for the establishment of a chancery court to be held at Bristol by the chancellor of the division in which Sullivan county was then embraced,

Railroad v. Byrne.

and the other sections for a law court to be held there by the judge of that judicial circuit. The act was assailed upon the ground that the title did not express the subject and that the body embraced two subjects. Mr. Justice McFarland, speaking for the court, said:

"The argument is that this act embraces two subjects —one, the establishment of a chancery court; the other, the establishment of a law court.

"The solution of this question depends in a great measure upon whether we adopt a liberal or a strict construction of the clause in question. A construction might be adopted of such a latitudinous character as virtually to neutralize the beneficial effects intended to be secured. On the other hand, a too rigid and strict construction would, in many instances, unnecessarily embarrass useful legislation.

"The duty of the court to pass upon the constitutionality of legislative acts is a very grave and responsible one. Every presumption should be made in favor of the validity of laws. The members of the legislature in enacting laws must, of necessity, judge of their constitutionality in the first instance, and the opinion of that body, which is not conclusive upon the court, is yet entitled to respectful consideration, due from one department of the government to another; and while the constitution is the supreme law, and the court should not, out of any mere feeling of deference to the legislature, hesitate to maintain its supremacy, yet legislative acts should not be subjected to a hypercritical

test. If subject to two reasonable constructions, they should be construed so as to give them effect, rather than to defeat them.

"They should not be declared void unless they appear to be manifestly so according to the plain letter and spirit of the constitution. Such are, in substance, the general principles maintained by Judge Cooley in his standard work (Cooley, Const. Lim., p. 182) and also by this court in *Cannon* v. *Mathes,* 8 Heisk., 504.

"Coming more directly to the provisions in question, Judge Cooley says, and his language is quoted with approbation in the case above referred to, that 'there has been a general disposition to construe these provisions liberally, rather than embarrass the legislation by a construction whose strictness is unnecessary to the accomplishment of beneficial purposes for which it is adopted.'

"Again: 'The general purpose of these provisions is accomplished when a law has but one general subject, which is fairly indicated in its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act would not only be unreasonable, but would actually render legislation impossible.' Const. Lim., 144; *Cannon* v. *Mathes,* 8 Heisk., 519. . . .

"A correct view of this question may be obtained by bearing in mind the evils intended to be guarded against. 'The intent of these provisions was to prevent the union in the same act of incongruous matters and

of objects having no connection or relation, and, with these, to prevent surprise in legislation, by having matter of one nature embraced in a bill where the title expressed another.' To prevent log-rolling or omnibus bills, and the evils and corruptions sometimes supposed to prevail in such cases, to prevent smuggling through important measures as amendments to or as parts of other laws, with which they have no connection, such, for instance, as attaching a charter for a bank to a bill granting aid to a railroad, or a section creating a felony to an act relating to a public road.

"Does this act come fairly within the evil to be remedied? Shall we say that the establishment of a chancery court at Bristol is one general subject, and the establishment of a law court is another general subject, and that it is necessary, in order to maintain the integrity of a clause of the constitution in question, to hold that these two general subjects should be accomplished by separate acts? . . . Treating the general subject of the act as the establishment of such additional courts for Sullivan county as the public exigencies demanded, it is manifest that this one subject is expressed in the title, to wit, 'An act to establish a chancery and law court at Bristol, in Sullivan county.' . . . It is argued that the title indicates but one court, a court having common-law and equity jurisdiction; whereas, the act provides for two courts, one of chancery and the other of law jurisdiction. This may

119 Tenn—20

be the strictly grammatical construction of the language of the title, but the point, though ingeniously pressed, is too fine for practical application."

The case of *State* v. *Brown,* supra, involved the constitutionality of an act entitled "An act to amend section 5365 of Milliken & Vertrees' Compilation of Laws of Tennessee, being section 4614 of the Code as amended by chapter 56 of the Acts of 1871, so as to raise the age of consent as set forth in said section to twelve years, and to prescribe the punishment in the penitentiary against persons having carnal knowledge of females over twelve and under sixteen years and one day of age." Acts 1893, p. 273, c. 129.

The body of the act contained provisions as specifically indicated in the title, and also for the punishment of persons aiding or abetting in the commission of those two offenses. It was held that the subject expressed in the title was the prevention and punishment of carnal connection with young females, and that all the provisions of the act related to this subject and were germane. It is there said:

"The subject of the legislation is general, and, being so, it is sufficient to cover all provisions in harmony with the object sought to be accomplished. It was not essential that the title be made an index or epitome of the act, nor that it should set forth the modes, means, or instrumentalities provided in the act for its administration and enforcement."

In *Ryan* v. *Terminal Company,* 102 Tenn., 127, 50 S

W., 744, 45 L. R. A., 303, where an act was assailed for insufficiency of title, it is said:

"The title gives clear notice to the legislature and the public that the object of the act is to provide for the organization of railroad terminal companies, which shall be clothed with powers necessary to effectuate the purposes of their creation."

For this reason the act was held to comply with this mandate of the constitution. And in *Truss* v. *State,* 13 Lea, 312, where this question was involved, it is said:

"Whatever is of sufficient import to direct the mind to the subject of proposed legislation meets the object of the constitution."

The validity of the act of 1907, however, does not depend upon the scope of the title of the act of 1895, which we have been discussing, but upon its own title.

The titles of the two acts are not the same. That of the last not only sets out in full the title of the original act, but materially enlarges it. The subject expressed is that of the original act, and the amendment of that act by increasing the number of judges of the court created by it, changing the name of the court, increasing its jurisdiction, and further limiting the jurisdiction of the supreme court.

Thus the title of the act of 1895 and its body are both amended by the latter act.

While a general title covering an entire subject cannot be enlarged by an amendatory act so as to include

other matter, because thereby two subjects would be introduced in the body of the act, we can see no reason why a restrictive title cannot be enlarged by that of an amendatory act, so as to allow legislation germane to the body of the original act. The title of the original act could have been made broad enough to cover matter of the amendment, and whatever could have been done originally can be done by amendment. If the rule were otherwise, it would be impossible to amend an act with a restrictive title, however germane the proposed amendment might be to the body of the original act. While this direct question has not before been presented to this court, yet we think the principle is distinctly recognized in our cases.

In the case of *Hyman* v. *State,* supra, relied upon by counsel in support of their proposition, the amendatory act merely stated the caption of the original act, which was restrictive, and did not enlarge it so as to cover the matter of the amendment, which, admittedly, was germane to the body of the act. For this reason the latter act was held void. It is there said:

"The title to the amendatory act in no way indicates the character of the amendment beyond a correct recital of the title of the act amended. It is not, however, important that the title of the amendatory act should do more than recite the title or substance of the act amended, provided the amendment is germane to the subject of the original act and is embraced within the title of such amendatory act. In other words, if the

title of the original act is sufficient to embrace the matter covered by the amendment, it is unnecessary that the title to the amendatory act should of itself be sufficient."

And in the case of *State* v. *Algood*, in 87 Tenn., 163, 10 S. W., 310, it is said:

"The criticism is that the title does not indicate the character of the proposed amendment. This is not necessary, if in fact the amendment is germane to the original act and is embraced within the title of the original or amended act. In such case, the title of the original act being made a part of the title of the amendatory act, the particulars of the amendment need not be shown by the title."

These cases are cited with approval in the later ones of *Goodbar* v. *Memphis*, 113 Tenn., 35, 81 S. W., 1061, and *Galloway* v. *Memphis*, 116 Tenn., 747, 94 S. W., 75.

We think it clearly inferable, from the quotation, we have made from *Hyman* v. *State*, that if the title to the amendatory act attacked in that case had, in addition to reiterating the title of the original act, gone further and stated the subject of the amendment, this court would have sustained the act. The object of requiring the subject of an act to be expressed in the title is to give notice to the members of the general assembly and the public of the character of the legislation about to be enacted. The evil intended to be prevented is surreptitious legislation. Clearly, if the title of the

amendatory act gives notice that a particular act is
to be amended and the nature of the amendment pro-
posed to be made, this is done so far as compliance with
the mandate of the constitution can effect it.    The gen-
eral assembly is empowered by the constitution to
amend all laws; the only limitation upon it being that
the title or substance of the law amended shall be re-
cited in the caption or otherwise in the amendatory act.
The power to amend acts with restrictive titles is not
withheld, but it could not be exercised unless the re-
strictive title can be enlarged so as to state the subject
of the amendment. 'If the law were otherwise, it would
result in much embarrassment to wholesome and needed
legislation.

That the subject of the amendment is properly ex-
pressed in the title of the amendatory act we think
there can be no doubt.

Certainly, the statement that the act was for the
purpose of amending the one creating the court of chan-.
cery appeals, so as to increase the number of judges of
the court, to change its name and increase its jurisdic-
tion, and further limit that of the supreme court, con-
veyed to the mind of every one information that addi-
tional jurisdiction, other than that of chancery appeals
already vested in that court, was intended to be con-
ferred upon it.    These changes proposed were of the
most radical character, and well calculated to give no-
tice that enlarged jurisdiction was intended to be con-
ferred upon the court.    The jurisdiction, as it had ex-

isted, was confined to the trial of chancery appeals, except those involving the revenue of the State, small in number, and there was no other civil jurisdiction to be conferred, but that of cases brought by proper proceedings in error from the circuit and common-law courts of the State. The notice that the judicial force would be increased clearly indicated a large increase of work to be performed, and the jurisdiction already possessed of necessity gave notice that the increase must relate to other classes of litigation. The name of the court implied that this increased jurisdiction would be cases of a civil nature.

We also think that the provisions of the act of 1907 are amendatory as purported in the title. While the act changes the name of the court of chancery appeals, increases its judicial force, confers upon it other and further jurisdiction and powers of the most important character, and provides for the exercise of them in a manner which that court could not under the act creating it, it is not an independent and complete scheme of legislation and does not establish a new court. This is made clear by a comparison of the provisions of the original act, which is a complete scheme of legislation, with those of the one in question.

The act of 1895 creates and establishes a court of intermediate appellate jurisdiction, styled the "court of chancery appeals," provides for the number of judges to preside in it, their eligibility, qualifications, compensation, mode of appointment and election, the

filling of vacancies, permanent or temporary; fixes the regular sessions of the court and authorizes special sessions to be held; provides for clerks and marshals to keep its records and attend it, and their compensation; makes it a court of record, defines its jurisdiction and powers and the mode of invoking them, and the effect of its judgments and decrees as liens upon the lands of parties against whom decrees may be pronounced; authorizes it to adopt its own rules of practice, and prescribes the proceedings to be pursued to review its decrees. Here a court is created, invested with well-defined jurisdiction and powers, and equipped with all the officers and machinery necessary and convenient for the exercise of them. Not only a court is created, but every constituent element necessary for its organization, the exercise of its jurisdiction, and the enforcement of its decrees is provided for. This is a complete and independent scheme of legislation, however limited the jurisdiction and powers of the court established may be.

Contrast this with the enacting clauses of the act of 1907. They do not purport to establish a court, and do not in fact do so, but in terms increase the judicial force of a court previously established and organized, the court of chancery appeals, from three to five judges, recognizing and conceding the official existence and continuance in office of the three composing that court; change the times when the sessions of the court are to be held, and the name and style of the court, and greatly

enlarge and extend its jurisdiction and power, and provide new and different means of invoking them. This is the sum and substance of this act. It is obvious that these provisions do not constitute a complete scheme of legislation. They do not create a court of judicature, complete in all its essential constituents—a court which can be organized, try and determine cases, and enforce and execute its judgments. Without the provisions of the act of 1895 we would have judges and jurisdiction without a court, without clerks and marshals, without records, and with no means of enforcing their adjudications.

If it be conceded that this act establishes a court, still it would be abortive, for the reasons stated and the further reason that, while five judges would be necessary to exercise the jurisdiction conferred upon it, it would, under the provisions of the act, have only two judges for the first three years of its existence, and for want of a quorum could do nothing. It is true that by section 2 the three judges of the court of chancery appeals are continued in office as judges of the court of civil appeals, during the constitutional term for which they were elected; but the provision to this effect would be invalid, because the legislature has no power to appoint or elect judges. This provision is a strong evidence of the amendatory character of the act; for it will not be presumed that the legislature intended to pass a void act, as this provision otherwise would be. If

possible, the provisions of an act must be so construed as to make them sensible and valid.

While for these reasons it is unmistakable that the act of 1907 is not a complete and independent scheme of legislation, creating a new intermediate appellate court to take the place of that established by the act of 1895, and thus by implication repealing that act, there are many things appearing upon the face of it that compel the conclusion that it is, as it purports to be in its caption, an act amendatory of the former one. In the first section it enacts, not that the court of chancery appeals be abolished, but that it be hereafter composed of five judges. In the second section it is enacted "that said court shall consist of three members now composing the same, and the governor shall, immediately after this act takes effect, appoint and commission as judges of said court two additional judges, who shall hold their office" until the first day of September, 1908, and until the qualification of their successors, and whose compensation shall be the same as provided for the present judges. Provision is made for the election of the successors of the two new judges to be appointed by the governor at the next general election, but none made for that of the successors of the three judges of the court of chancery appeals until the expiration of their constitutional term of office, at which time "five judges of said court, instead of three as now provided, who shall have the same qualifications as now required for judges of said court, and said election shall be held

Railroad v. Byrne.

in the same way and manner as elections for members of the said court are now held"—thus in terms recognizing the provisions of the former act providing for the qualification of judges and the mode of their election. In no other manner are these matters provided for in the latter act.  In section 7 it is provided that, after the approval of this act, the supreme court shall not assign cases to the court of intermediate appellate jurisdiction, the subject of the legislation, for trial, as it was authorized to do by the act of 1895.  If the act of 1895 was intended to be repealed, what was the necessity of this provision?

And by section 10 it is expressly enacted "that except as amended by this act said chapter 76 of the Acts of 1895 shall remain in full force."

There is no ground here for the contention that the act of 1895 is repealed by implication.  Repeals by implication are not favored, and a later act will not be held to thus repeal a former one upon the same subject, unless the two are absolutely repugnant and in irreconcilable conflict.  Nothing short of this can have that effect.  *McCampbell* v. *State,* 116 Tenn., 107, 93 S. W., 100; *Fisher* v. *Baldridge,* 91 Tenn., 418, 19 S. W., 227; *Frazier* v. *Railway Co.,* 88 Tenn., 163, 12 S. W., 537; *Blaufield* v. *State,* 103 Tenn., 593, 53 S. W., 1090.

There is no conflict between the act of 1895 as amended by that of 1907; but, on the contrary, the provisions of the two acts are necessary to carry into effect the common object of the general assembly in enacting them.

The two together, instead of being repugnant, constitute a harmonious whole and one complete scheme of legislation, establishing a court of intermediate appellate jurisdiction, to expedite the review of the judgments and decrees of trial courts and relieve litigants from delays in such matters caused by the congested condition of the dockets of this court.

Therefore it is apparent that the case of *Malone and others* v. *Williams and others,* 118 Tenn., 390, 103 S. W., 798, lately decided by this court at Jackson, and relied upon by counsel to support the latter subdivision of their objection to the constitutionality of the act, is not in point. There the later act, while purporting in its title to amend a former one, constituting the charter of the city of Memphis, contained provisions covering the whole subject of the creation and incorporation of a municipality, and was in form and substance a new charter, intended to supersede and take the place of the old one, which the title purported to amend. It vacated and abolished all the offices existing under the old charter, and created new ones, with provisions for the appointment and election of new officers. It was, in short, a new charter, intended to and effective, if it had been valid, to supersede the existing charter of the city. Without going into further details, the character of the legislation in that case held void will fully appear when it is stated, as was conceded, that the bill was originally introduced as an independent act to provide a new charter for the city of Memphis, and its title subsequently

changed so as to purport to be amendatory of the one then in force.   The act under consideration in this case and the one involved in that case are entirely different in form, substance, and effect, and the intention of the legislature in enacting the one directly opposite of that in enacting the other.   The act under consideration purports in its caption to, and in its body does, amend the former act in certain particulars, but expressly provides that all the other provisions of that act shall remain in full force and effect.   It does not abolish the court or vacate any office.   The two are not in conflict, but can stand together and be enforced as a consistent whole. The act declared void in *Malone and others* v. *Williams and others* in effect abolished the old charter, vacated the offices of all its officers, and created a complete and new city government.   It covered the whole ground legislated upon in the former act, constituting the charter of the city of Memphis.   The two acts were inconsistent and irreconcilable, and could not stand together, and therefore it was properly held that the subject of legislation in the body of the latter act was not expressed in its title, and that the act was in contravention of section 17, art. 2, of the constitution, and invalid.

We therefore are of the opinion and hold that the subject of chapter 82 of the Acts of 1907 is expressed in its title, and the act is amendatory in its nature, and valid and constitutional.

The second contention of the parties is that upon a proper construction of section 7 of the amendatory act,

Railroad v. Byrne.

conferring jurisdiction upon the court of civil appeals, cases involving the constitutionality of a statute of Tennessee and certain other classes of litigation are excepted, and the jurisdiction of this court to hear and determine them upon proper proceedings in error as heretofore exercised is not only left undisturbed, but expressly reserved, and that, since this case involves a question of that kind, they are entitled to have it here tried and finally determined. The particular part of this section which it is said must be so construed is in these words:

"That the jurisdiction of the said court of civil appeals shall be appellate only and shall extend to all cases brought up from courts of equity and chancery courts except cases in which the amount involved, exclusive of costs, exceeds one thousand dollars, and except cases involving the constitutionality of statutes of Tennessee, contested elections for office, State revenue and ejectment suits, and to all civil cases tried in the circuit and common-law courts of the State in which appeals in the nature of writs of error, or writs of error, may be applied for, for the purpose of having the action of said trial court reviewed."

It is insisted that it was the intention of the legislature that the exceptions following the provisions conferring jurisdiction in cases brought up from courts of equity were also intended to apply to cases where proceedings in error were prosecuted to review judgments of the circuit and other courts of common-law jurisdic-

tion of the State, and that this intent appears upon the face of the statute, when considered and interpreted in the light of the constitutional jurisdiction of this court, its history, and the previous statutes in relation to that jurisdiction, and the objects and purposes of the legislature in enacting this one, and that it should be so construed.

This contention involves the jurisdiction of this court and the right of litigants to invoke it directly by appeal, appeal in the nature of a writ of error, and writ of error, the forms of proceeding in error which have been so long allowed by express statutes and freely exercised by all parties seeking to review the judgments of trial courts of the State, and an understanding of these matters will aid in the decision of the question we now have to decide.

The judicial department of the State was first created and made one of the co-ordinate branches of the State government by the constitution of 1834. The supreme court was established by that constitution and vested with its jurisdiction. The provisions in relation to these matters were brought forward and embraced, in almost the same words, in the constitution adopted in 1870. The judiciary represents its particular part of the sovereignty of the State which the people, the original fountain of all governmental power, have vested in it, and its power is as absolute and uncontrollable within its sphere as that of the legislative and executive departments. They all have the same high origin and

are equally independent. The supreme court, establish-
ed and vested with its jurisdiction and powers by the
constitution, is the highest judicial tribunal in the State.
It takes its rank from the constitution, and it and its
jurisdiction cannot be interfered with by the other
branches of the government. Its adjudications are final
and conclusive upon all questions determined by it, save
those reserved to the federal courts, which may be re-
viewed by the supreme court of the United States. *Mil-
ler* v. *Conlee,* 5 Sneed, 432; *Dodds* v. *Duncan,* 12 Lea,
731; *State* v. *Gannaway,* 16 Lea, 124.

Its jurisdiction is appellate only; the concluding part
of the last sentence of article 6, section 2, referring alone
to the powers which it may exercise to enforce that
jurisdiction. · *State* v. *Bank of Tennessee,* 5 Sneed, 573;
*Memphis* v. *Halsey,* 12 Heisk, 213; *State v. Gannaway,*
16 Lea, 124.

The establishment of the court and vesting it with ap-
pellate jurisdiction only is an implied declaration that
it shall possess some revisory jurisdiction and powers,
and that some right of appeal to it must exist. This in-
violable jurisdiction, and the right to invoke it, undoubt-
edly extends to cases involving questions of law of great
public importance; but no definite statement of it can
be outlined, and each case must be determined with re-
gard to the questions involved as it arises. The general
assembly may, by the establishment of courts of inter-
mediate appellate jurisdiction or other appropriate leg-
islation, limit and restrict the right of litigants to resort

to it, and regulate the mode of doing so, but not so as to unreasonably interfere with or embarrass its ultimate revisory powers; and it is always for this court to decide when its constitutional jurisdiction is encroached upon.   It has exercised this power since it was first established.   *Miller* v. *Conlee,* supra; *State* v. *Bank,* supra; *Chestnut* v. *McBride,* 6 Baxt., 95; *Newman* v. *Scott County Justices,* 1 Heisk., 787; *Ward* v. *Thomas,* 2 Cold., 565; *Hundhausen* v. *Marine Fire Insurance Co.,* 5 Heisk., 704; *McElwee* v. *McElwee,* 97 Tenn., 657, 37 S. W., 560; *Chattanooga* v. *Keith,* 115 Tenn., 589, 94 S. W., 62.

The right of direct resort to this court by appeal, appeal in nature of a writ of error, and writ of error to review judgments of trial courts was provided for by appropriate legislation when it was first established; and, notwithstanding many attempts have been made to limit and restrict this right, it has never been done, unless it is by the act of 1907 amending that creating the court of chancery appeals.   The statutes establishing the court of referees, the arbitration court, and the court of chancery appeals, all courts of intermediate appellate jurisdiction, did not limit this right.   Those courts had no direct revisory jurisdiction.   All proceedings in error were taken directly to this court in the usual way, and it assigned such cases as it deemed proper to those for decision.

These are matters that must be taken into considera-

Railroad v. Byrne.

tion in construing and passing upon the validity and effect of all statutes which in any manner affect the jurisdiction of this court and the right to invoke it, under the well-settled rules that all statutes must be construed in connection with all others constituting the system of which they are a part, and that those which limit the jurisdiction of an established court, or confer it upon another court, are to be construed strictly, so as not to interfere with the exercises of that jurisdiction by the former court, unless the legislative intent that that be done affirmatively appears.

Now, coming to the direct question for decision, the controlling principle in the construction of all statutes is to arrive at the intent of the general assembly in enacting them. When that intent is ascertained, it must be given effect, regardless of the wisdom, policy, or convenience of the act, as these are considerations for the legislature, with which the courts have nothing to do. If such intent appears from the plain, unambiguous language of the statute, there is no room for construction, and it must be enforced as written; but when the act is ambiguous, and its meaning uncertain, it is the duty of the court to ascertain and declare the intention of the lawmakers, and to so construe the statute that the true legislative intent may be carried out.

Ambiguity in a statute may arise either from confusion or indefiniteness in the language used, or the consequences of strict adherence to the literalism of that

Railroad v. Byrne.

language. In Lewis' Sutherland on Statutory Construction, section 377, it is said:

"Uncertainty of sense does not alone spring from uncertainty of expression. It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, and obscurity of meaning exists, calling for judicial construction, we must in that event look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby, if possible, discover its real purposes; and, if such purposes can reasonably be said to be within the scope of the language used, it must be taken to be a part of the law, the same as if it were plainly expressed by the literal sense of the words used. In that way, while courts do not and cannot properly bend words out of their reasonable meaning to effect a legislative purpose, they do give to words a liberal or strict interpretation within the bounds of reason, sacrificing literal sense and rejecting interpretation not in harmony with the evident intent of the lawmakers, rather than that such intent shall fail."

We think there is such ambiguity upon the face of the provision of this act, conferring jurisdiction upon the court of civil appeals that judicial interpretation and construction are necessary to ascertain and give effect to the intent of the legislature; for, if it be read literally, it will be in part unconstitutional and void, in part in-

operative, and will lead to the most absurd, unreasonable, and inconsistent results. The general object of the legislature in establishing a court of intermediate appellate jurisdiction, we have seen, was to relieve the congested dockets of this court. It is presumed that that deliberative body, in a matter of this great importance, had a well-defined and consistent scheme or plan to effect this object. The object of the legislation, the relief of the dockets of this court and prevention of delays resulting from its congested condition, could only be effected by conferring upon the court created jurisdiction to review a portion of the cases which were, before the passage of this act, ordinarily brought to this court. The legislature had to determine the jurisdiction to be conferred upon that court, and in doing so it must be presumed that it had in mind the constitutional jurisdiction of this court, which could not be conferred upon any other court or limited and restricted, and that there were also certain classes of litigation which are of such importance to litigants that they have in the past always been prosecuted to final determination in this court, and a review of which, in an intermediate court, would only entail additional delay and expense to litigants, and that it also knew and took into consideration the fact that in cases of comparatively small importance litigants would probably be satisfied by a review of the judgments and decrees of trial courts in a court of intermediate jurisdiction, and allow the litigation there to end, when they would not do so in those of greater importance.

The further fact that, if the cases of which the court of civil appeals was given jurisdiction were to be ultimately brought to this court for review, the creation of that court would utterly fail of its purpose, could not have been overlooked. Considering the constitutional origin and jurisdiction of this court, and its dignity as the highest tribunal of the State, it was also fit and proper, and must have been intended, that the cases directly. brought to it should be those of the highest importance, and that the inferior appellate court should have jurisdiction of those of less importance. We think the legislature was controlled by these considerations, and that this fully appears from the provisions in the statute excepting cases of certain classes from the jurisdiction of the court of civil appeals. We will briefly consider the character and nature of the cases coming within these exceptions.

Cases involving the constitutionality of statutes of Tennessee, the revenues of the State, and contested elections are excepted. These are the most important classes of litigation in our courts, and without doubt are of that character which the jurisdiction of this court to review by direct proceedings in error from the trial court cannot be limited or restricted. Cases involving constitutionality of statutes, on account of their great importance, should be heard and determined by the court of last resort as soon as possible, in order that the public may know whether the statute in question is valid or invalid. The imperative necessity of speedy, uniform,

and final decision of such cases is too evident to require elaboration. Cases involving State revenue are also of like importance. They vitally affect the interests of the State and all of its citizens. There is the utmost necessity that they be decided by this court speedily and finally. It has always been the policy of the legislature and of the courts to have this done, and in furtherance of this policy it is made the duty of the courts to advance and hear them with preference over all other causes, and they were excepted from the jurisdiction of the referee court, the arbitration court, and the court of chancery appeals. There has never been any statute in this State limiting the right of either the State or the taxpayer to bring such cases directly before this court for adjudication, and it is not to be presumed that the legislature, without some imperative reason therefor, would change its settled policy in so important a matter.

The constitutionality of a statute and the validity of a tax are purely legal questions, and the decision of them by an intermediate appellate court would not, as a rule, satisfy litigants or end the litigation; nor would it lighten the labors of this court any more than the decision of them by the court of original jurisdiction. They are generally brought before this court, and should be, in order that a certain and uniform rule be established.

Ejectment cases involve rights and questions of law of the utmost importance to the people of the State. Our

Railroad v. Byrne.

land laws are a complicated artificial system, composed of numerous statutes enacted from time to time, and the stability of titles and value of this class of property imperatively require that the construction of these statutes be uniform and settled. The people of the State are more deeply interested in the property involved in such cases than any other kind; the disputes and controversies in relation to it are more hotly contested, and produce more bitterness and violence than that in relation to any other; and every consideration requires a final and speedy determination of this class of litigation.

Contested elections are also cases of great importance, both to the contestants and the public. When they are once instituted, they are, with rare exception, prosecuted to final determination in this court. It is also the policy of the legislature, in order to end the strife and animosities which attend such contests, to have them speedily and finally decided, and for this purpose a special tribunal has been created to try contests for certain offices.

The exception of cases involving the constitutionality of statutes of Tennessee, the revenues of the State, and contested elections from the jurisdiction of the court of civil appeals was evidently made because the constitutional right of litigants to invoke the jurisdiction of this court to review them could not be limited or restricted, and that of ejectment cases on account of the very great importance of that class of litigation, and the

almost uniform practice to bring them to this court for final decision. We are of the opinion that it was the evident intent of the legislature that all cases coming within these classes should be excepted from the jurisdiction of the court of civil appeals, regardless of whether they originated and were brought up from the chancery or circuit and other common-law courts of the State, and that section 7 of the statute should be so read and construed. If we were to construe this section otherwise, so far as it purports to confer jurisdiction upon that court of cases involving the constitutionality of statutes, the revenues of the State, and contested elections, it would be void, and as to ejectment cases it would be inconsistent and absurd; results which are always to be avoided in the construction of statutes, if it is possible to do so. No good reason can be given why the exceptions contained in the statute should be applied to cases appealed from the chancery court, and not to those brought up for review from the circuit and common-law courts; for none exists. It is true that it is not necessary that a reason appear for the enactment of a statute; but the absence of one for a provision inconsistent with other provisions of a statute and the purpose of the legislation is evidence that the inconsistency is apparent only, and was not intended. We do not think the legislature intended to make a distinction between cases brought up for review because of the court of original jurisdiction. The importance of controversies is not measured in this

Railroad v. Byrne.

manner, but by the questions of law or fact or the rights of the parties involved.   The chancery and circuit courts of the State have very large concurrent jurisdiction, embracing all the cases excepted from the jurisdiction of the court of civil appeals save contested elections; and the same reason that would lead the legislature to except cases originally instituted in one court would apply to those brought in the other.   We do not think the legislature could have intended such an inconsistency and absurdity as a distinction of this character in the right of litigants to invoke the jurisdiction of this court, nor do we think it intended to discriminate between litigants bringing suits in the chancery and circuit courts of the State unfavorably to those suing in the latter, which is supposed to be nearer to and more favored by the people of the State on account of its jurisdiction and practice being in conformity with the common law.   It is a familiar rule of construction that statutes are to be construed, if possible, so as to give force and effect to all their provisions, and that no part thereof shall be inoperative.   If section 7 be not construed to extend the exceptions there made to cases brought up from courts of common-law jurisdiction, one of the exceptions, that of contested elections, wholly fails.   The chancery courts of the State have no jurisdiction of contested elections in any case; nor did the court of chancery appeals, as originally established, have jurisdiction of such cases. *Shields* v. *Davis*, 103 Tenn., 538, 53 S. W., 948.   The jurisdiction of such cases is vested in special tribunals

and in the circuit courts of the State, and they alone have power to hear and determine them. *Harmon* v. *Tyler,* 112 Tenn., 8, 83 S. W., 1041; *Johnson* v. *Brice,* 112 Tenn., 59, 83 S. W., 791.

If these exceptions be confined to cases brought from the chancery court, this, one of the most important, will be meaningless and inoperative. Certainly the legislature did not intend this result. The construction we have given this section sustains its validity, gives effect to all its provisions, and carries out the sole and only object of the creation of the court. It is to our minds clearly and indisputably in accord with the legislative intent and necessary to make it effective. It is in accord with the spirit of the act—the only sensible construction that can be given it. It is in accordance with the well-settled rule that, whenever the legislative intent can be ascertained, it will be given effect, if possible, without regard to the letter of the statute, and that the real intention of the legislature will always prevail over the literal use of terms. *State* v. *Clarksville & R. Turnpike Co.,* 2 Sneed, 89; *Brown* v. *Hamlett,* 8 Lea, 735. And a reasonable construction, rather than one that is unreasonable, must be given a statute, when it is susceptible of such construction. *Horne* v. *Railroad,* 1 Cold., 78; *Bank* v. *Cooper,* 2 Yerg., 603, 24 Am. Dec., 517.

The rule of construction applicable to this case is well stated in Lewis' Sutherland on Statutory Construction, section 376, in these words:

Railroad v. Byrne.

"When the intent is plain, words, and even parts of sentences, may be transposed to carry it into effect. Restrictive clauses, significant of the intent in certain divisions, may be supplied by intendment in others. General words do not always extend to every case which literally falls within them. When the intention can be collected from the statute itself, words may be modified, altered, supplied, or disregarded, so as to obviate any repugnance or inconsistency with such intention."

This is in substance held in our own cases of *Nichols, Sheppard & Co.* v. *Loyd*, 111 Tenn., 145, 76 S. W., 911, and *Wright* v. *Cunningham*, 115 Tenn., 445, 91 S. W., 293, and *State* v. *Phoenix Insurance Co.*, 92 Tenn., 427, 21 S. W., 893. To the same effect is the case of *United States* v. *Kirby*, 7 Wall. (U. S.), 482, 19 L. Ed., 278. In the case of *Gold* v. *Fite*, 2 Baxt., 249, Mr. Justice Cooper, speaking for the court said:

"A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter. And a thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers, and such construction ought to be put upon it as does not suffer it to be elevated" [included].

In *Rose* v. *Wortham*, 95 Tenn., 508, 32 S. W., 459, 30 L. R. A., 609, Mr. Justice Wilkes says:

"In Sutherland on Statutes and Statutory Construction it is said in substance that the presumption is that the lawmakers have definite purposes in every enactment, . . . and that purpose is an implied limita-

Railroad v. Byrne.

tion on general terms and a touchstone for the exposition of narrower terms used in the statute. The cardinal purpose of the act must control, and words and phrases must be read in such sense as will harmonize with the subject-matter and general purpose of the statute. Mr. Kent, upon the same subject, says: 'In the exposition of a statute, the intention of the lawmakers will prevail over the literal sense of the terms, and its reasons and intentions will prevail over the strict letter.' "

He further quotes with approval this from Mr. Sutherland's work:

"Not only may the meaning of words be restricted by the subject of the act, . . . but for like reason they may be extended. . . . The intention of the act will prevail over the literal sense of its terms. . . . The particular inquiry is, not what is the abstract force of the words used, but in what sense were they intended to be used as found in the act? This sense is to be collected from the context, and a narrower or more extended meaning according to the intention thus enacted."

We think, in the light of these authorities, the clear intent of the legislature appearing, the statute must be construed so as to apply the exceptions we have specially mentioned to all cases appealed from trial courts of this State. The majority of the court, however, are of the opinion that the reasons upon which we are brought to this conclusion do not apply to the exception of cases involving more that $1,000, and that, therefore, in all suits brought up from circuit and common-law courts

Railroad v. Byrne.

of the State, not coming within the other four classes mentioned, the court of civil appeals has primary appellate jurisdiction to review the judgments of those courts.

Mr. Justice Neil and the writer of this opinion do not concur with the majority in the distinction here made between the five exceptions to the jurisdiction of the court of civil appeals contained in the statute. We think all the exceptions were intended to apply to all cases brought up from trial courts for review, and that no such distinction can logically be made.

While cases involving the constitutionality of statutes, questions of State revenue, contested elections, and land titles are of greater public importance, and stronger reasons exist for their review by direct proceedings in error by the court of final resort than those involving mere sums of money, yet the legislature, in limiting the jurisdiction of the court of civil appeals, has classed them all together. The legislature unquestionably had the power to do this. The reason for this classification is immaterial. It must be presumed that it was a sound one. It may have been because cases of this magnitude are generally appealed to this court, and it would serve no good purpose to have them pass through an intermediate appellate court. We can see no good reason why four of the five exceptions made in the statute should be carried forward into and held to limit the law jurisdiction of the court of civil appeals, while a different effect is given to the fifth. All the excep-

Railroad v. Byrne.

tions appear in the same sentence, and have the same connections with the other parts of the jurisdictional provisions of the statute, and the words supplied or transposed, necessary to extend one of them, apply with equal force to all of them. We find nothing in the statute expressive of the legislative intent that there should be any distinction in the jurisdiction conferred by this section in any case because of the court in which it was originally brought. The construction that we have given the statute makes all of its provisions upon the subject of jurisdiction harmonious and consistent, and maintains uniformity in the jurisdiction of both appellate courts. We believe the same legislative intent exists as to all the exceptions made, and that they must all be treated alike. There is, in our opinion, no recognized rule of statutory construction upon which we can hold otherwise.

For these reasons we dissent from the opinion of the majority upon this point.

The writer of this opinion, while not dissenting from the conclusion of the majority upon which the motion of the parties to have this case here docketed and tried is sustained, is of the opinion that that is not the true and sound ground upon which the decision of the court should be rested. The act of 1907, conferring limited appellate jurisdiction upon the court of civil appeals, is not, in his opinion, effective to deprive this court of any part of the jurisdiction which had been conferred upon it by previous statutes, or to restrict the right

of litigants to invoke it by the ordinary proceedings in error. In other words, the jurisdiction conferred upon that court is not exclusive, but concurrent. The jurisdiction of an established court is not affected by a statute conferring the same jurisdiction upon another court, unless the purpose that the jurisdiction conferred shall be exclusive in the latter court be expressed in clear and unmistakable terms. This is a well-settled principle applicable to the jurisdiction of courts.

In Lewis' Sutherland on Statutory Construction, section 569, the rule is stated in these words:

"When the jurisdiction is once granted, it will not be deemed taken away by a similar jurisdiction being given to another tribunal. In *Commonwealth* v. *Hudson*, the question was whether a grant of certain jurisdiction to justices of the peace affected that previously existing in the court of common pleas over the same subject. Shaw, C. J., said: 'Before this statute the court of common pleas had jurisdiction over this matter. Is that jurisdiction taken away? It is no answer to say that another tribunal has jurisdiction, for that is very common. It is, in such a case, concurrent jurisdiction, whether so called in the statute or not. There must be words of limitation to take it away, either by using the word "exclusive," or by repealing the former act giving jurisdiction, by which it may appear that the legislature meant, not only to confer jurisdiction upon justices of the peace, but to take away the other jurisdiction.' Only express words, or what is equiva-

lent, can take away the jurisdiction of the superior courts. This principle applies, not only to the court's original, but to its appellate, jurisdiction and its customary modes of exercising them. Statutes which deprive a court of jurisdiction are strictly construed, while those which extend its jurisdiction are liberally construed."

In *Delafield* v. *State of Illinois*, 2 Hill (N. Y.), 164, this is said:

"There is nothing in the nature of jurisdiction as applied to courts which renders it exclusive. It is not like a grant of property, which cannot have several owners at the same time. It is a matter of common experience that two or more courts may have concurrent powers over the same parties and the same subject-matter. Jurisdiction is not a right or privilege belonging to a judge, but an authority or power to do justice in a given case when it is brought before him. There is, I think, no instance in the whole history of law where the same grant of jurisdiction to a particular court, without any words of exclusion, has been held to oust any other court of the powers which it before possessed. Creating a new forum with concurrent jurisdiction may have the effect of withdrawing from the courts which before existed a portion of 'the cases which would otherwise have been brought before them; but it cannot affect the power of the old courts to administer justice when it is demanded at their hands."

In *Tackett* v. *Vogler*, 85 Mo., 480, it is said:

"Where a court originally possesses jurisdiction over a subject, a subsequent legislative enactment giving another court jurisdiction over the same subject, but containing no express words excluding the jurisdiction of the former court or repealing the statute conferring jurisdiction on that court, does not divest it of jurisdiction."

In *First National Bank* v. *Treasurer of Lucas County* (C. C.), 25 Fed., 749, we find this:

"So, too, it is a general rule of law that in all these cases of special tribunals their jurisdiction is strictly confined, and never excludes the court of ordinary jurisdiction, except upon the clearest direction of the legislative will."

In *Cook* v. *State National Bank of Boston,* 52 N. Y., 96, 11 Am. Rep., 672, Church, C. J., in sustaining the jurisdiction of the court to try the case, the objection to it being that it had been conferred on another court, said:

"There are no words of exclusion in the act, and it is a general rule as to all jurisdiction that to confer it upon one court does not operate to oust other courts before possessing it, for the reason that concurrent jurisdiction is not inconsistent."

The consensus of judicial opinion, federal and State, is to the same effect. *Starr* v. *Trustee,* 6 Wend. (N. Y.), 566; *Commonwealth* v. *Hudson,* 77 Mass., 64; *Tritt* v. *Bize,* 51 Ga., 494; *Courtwright* v. *Bear River, etc., Min-*

*ing Co.,* 30 Cal., 580; *McGhee* v. *State,* 2 Lea, 625; *Taylor* v. *Pope,* 5 Cold., 414. The question arose in this last case in this way: Previous to May 26, 1866, the jurisdiction of justices of the peace in replevin cases was limited to the property of the value of $50, and in all other cases jurisdiction was vested in the circuit court. The legislature then passed an act conferring jurisdiction on justices of the peace in cases where the property sought to be replevined was of the value of $250. It was insisted that the effect of this act was to take away from the circuit courts jurisdiction in similar cases. This court held this contention to be unsound, and that the jurisdiction conferred upon justices of the peace was not exclusive, but concurrent.

It is also held that a statute providing new methods for the review of judgments of inferior courts does not abolish those already existing; the new ones being simply cumulative. *Fisher* v. *Baldridge,* 91 Tenn., 418, 19 S. W., 227; *Peck* v. *Hapgood,* 10 Metc. (Mass.), 172.

The act of 1907 contains no words making the jurisdiction conferred upon the court of civil appeals exclusive in that court; nor is there any provision in that or any other statute repealing the statutes that confer similar jurisdiction upon this court. The general repealing clause of the statute is not effective for that purpose. *Turner* v. *State,* 111 Tenn., 607, 69 S. W., 774. Nor are these statutes repealed by implication.

Railroad v. Byrne.

There is no irreconcilable conflict between them and the one in question.

Concurrent jurisdiction, original and appellate, is not a novelty, but very common in our system of jurisprudence. It has been vested in several courts. Justices of the peace and circuit and chancery courts have very extensive and important concurrent jurisdiction. There are cases in which the circuit and chancery courts have concurrent appellate jurisdiction with this court of appeals from judgments of the county courts, with final jurisdiction in this court, as under this act.

There is no repugnancy between the statute conferring appellate jurisdiction upon the court of civil appeals and that vesting it in this court. Appellate jurisdiction to review judgments and decrees of trial courts can consistently exist in both courts under these statutes, with final revisory jurisdiction in the supreme court. Proceedings in error, where the jurisdiction is concurrent, may be taken to either of them at the option of litigants, and the purpose of the act in question thus accomplished.

The majority of the court, however, are of the opinion that it is not now necessary to decide whether the jurisdiction of the two courts is concurrent, and this question is not determined.

We are therefore of the opinion, for the reasons concurred in by the majority; that this court has jurisdiction of this case, and the parties have a right to have it here tried and determined; and it is so ordered.